[No. A062120. First Dist., Div. Four. Oct. 18, 1995.]

MAE DARDEN, as Successor in Interest, etc., Plaintiff and Appellant, v. GENERAL MOTORS CORPORATION, Defendant and Appellant.

[Opinion certified for partial publication.*]

*This opinion is certified for publication with the exception of part II.C.

350

**COUNSEL**

Cartwright, Slobodin, Bokelman, Borowsky, Wartnick, Moore & Harris, Harry F. Wartnick, Audrey A. Smith and Daniel U. Smith for Plaintiff and Appellant.

Grace, Skocypec, Cosgrove & Schirm, Philip R. Cosgrove, Thomas H. Hutchinson and David K. Schultz for Defendant and Appellant.

**OPINION**

**REARDON, J.**—This case presents a new twist to the statute of limitations case law evolving in asbestos personal injury litigation. On October 28, 1987, John Darden (plaintiff) filed suit against General Motors Corporation (GM) and others for personal injuries based on exposure to asbestos (Darden I).[1] On June 12, 1990, plaintiff stipulated to settlements totaling over $200,000 against certain defendants and dismissed the action against them with prejudice. At the same time he dismissed without prejudice as to the remaining nonbankrupt defendants, including GM. Then on June 27, 1991, plaintiff filed a virtually identical complaint against GM and others (Darden II).

---

[1]GM is appellant and cross-respondent herein. Plaintiff John Darden died in August 1993; Mae Darden has been substituted as his successor in interest and is respondent and cross-appellant herein.

It is Darden II that concerns us. ■■■ We hold that this second action against GM was time-barred under the one-year statute of limitations set forth in Code of Civil Procedure section 340.2.[2] Although plaintiff claimed the statute never began to run against him because he did not suffer a disability within the meaning of section 340.2, unquestionably with the commencement of Darden I he was on record that he knew and believed his cause of action had accrued for asbestos-related illness. Further, there is no substantial evidence to bolster the jury's finding that plaintiff was not disabled when he retired as a repairman in 1982. Since the evidence conclusively established that his illness at that time was related to asbestos exposure and that at the latest plaintiff was on notice in 1986 that he had asbestos-related lung disease, the 1991 action was untimely. Accordingly, we reverse the judgment.

## I. Background

### A. *Plaintiff's Work History*

Plaintiff worked at the Alameda Naval Air Station as an auto mechanic for one and a half years from 1946 to 1948. He did three or four brake jobs and worked in the vicinity of others who did brake work. The various brake operations created dust which the workers breathed.

Between the years 1946 and 1948, GM brake parts contained 40 to 60 percent chrysotile asbestos. GM sold brake products under its own name and under the brand name "Delco." GM and Delco brake parts, as well as other brands, were used at the naval air station during the period 1946 to 1948. About 70 percent of the vehicles that came to the shop during that time were GM vehicles. Arnold Hawkins, a mechanic who also worked in the same garage during this time frame, testified that when he worked on a GM car he would get GM or Delco brake parts; he ordered the parts according to the type of car he was working on and the parts person would deliver the correct part.

Starting in 1950, plaintiff began working as a sheet metalist in the naval shipyards where he was exposed to asbestos during the process of ripping out and replacing pipes and ventilation lines on ships. He retired in 1970 from the Mare Island shipyard. In 1974 plaintiff went to work as a repairman for Security Pacific Real Estate. He left Security Pacific in 1982. Plaintiff was diagnosed in 1986 with pulmonary fibrosis and asbestos-related pleural disease.

---

[2]All further statutory references are to the Code of Civil Procedure.

## B. *The Darden I & II Lawsuits*

Since then plaintiff pursued two personal injury actions; the second proceeded to trial and judgment against GM. Prior to trial, GM joined another defendant's summary judgment motion. Defendants argued without success that Darden II was time-barred and plaintiff should not be allowed to rely on section 340.2 to file multiple actions beyond the one-year limitation, thereby escaping the normal procedural rules of litigation. Denying the motion, the court nonetheless expressed that it "was appalled that that's what the law is. . . . [¶] . . . [T]he Court of Appeal has told me that under the facts where somebody retires before he is disabled the statute never runs . . . ." GM also urged the statute of limitations defense through an *in limine* motion and motions for nonsuit and judgment notwithstanding the verdict/ new trial, again without success.

The jury delivered a judgment on special verdict, finding that plaintiff was disabled from performing his regular occupation as sheetmetal worker at Mare Island, but that his disability was not "caused or contributed to by his exposure to asbestos." The jury further found that plaintiff was not disabled from performing his regular occupation as repairman for Security Pacific.[3]

The jury found GM 1 percent at fault. It assessed economic damages at $100,000 and noneconomic damages at $750,000. With reductions for prior settlements, the total judgment against GM was $77,546. This appeal followed.

## II. DISCUSSION

### A. *Background*

Section 340.2 states in part: "(a) In any civil action for injury or illness based upon exposure to asbestos, the time for the commencement of the action shall be the later of the following: [¶] (1) Within one year after the date the plaintiff first suffered disability. [¶] (2) Within one year after the date the plaintiff either knew, or through the exercise of reasonable diligence should have known, that such disability was caused or contributed to by such exposure. [¶] (b) 'Disability' as used in subdivision (a) means the loss of time from work as a result of such exposure which precludes the performance of the employee's regular occupation."

---

[3]Plaintiff testified at trial that he left Security Pacific in 1982 because he was laid off—"they were trying to cut our expenses, and they said they could do without the help at that time." Further, his expert, Dr. Horn, was of the opinion that plaintiff could still have done his job as handyman at the time of retirement in 1982.

The Legislature enacted section 340.2 in recognition of the lengthy period of time that may elapse before serious asbestos-related disease develops. Thus, the statute provides for delayed accrual beyond the point of discovery—it does not start to run until plaintiff suffers a "disability," or knows or should know such disability is caused or contributed to by exposure to asbestos. (*Blakey* v. *Superior Court* (1984) 153 Cal.App.3d 101, 105-106 [200 Cal.Rptr. 52]; 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 411, p. 441.) The *Blakey* court explained: "It may seem somewhat anomalous that the statute of limitations with respect to complainants who actually know that they have sustained injury or illness as a result of asbestos exposure never commences to run until the occurrence of 'disability' within the meaning of section 340.2, regardless of when knowledge of the injury or illness was acquired. That is the effect, however, of the statutory scheme enacted by the Legislature." (153 Cal.App.3d at p. 107, italics omitted.)

*Duty* v. *Abex Corp.* (1989) 214 Cal.App.3d 742 [263 Cal.Rptr. 13] took the *Blakey* analysis a step further. Mrs. Duty retired from her last job 11 years before she was diagnosed with lung cancer caused by earlier, work-related asbestos exposure. Six years later she filed her complaint for personal injuries. Interpreting section 340.2 quite literally, the reviewing court determined that it applies to actions commenced by retirees, but that the concept of "disability" does not encompass persons who retire before the onset of what might otherwise be considered a "disability." The court explained that these retirees are not employees precluded from performing their regular job due to loss of time from work within the meaning of section 340.2. (214 Cal.App.3d at pp. 749-751.) This interpretation, it emphasized, was consistent with the statute's purpose of encouraging asbestos victims to continue working without fear that by so doing they would jeopardize their recovery rights. (*Id.*, at p. 751.)

Not all retirees can avoid the section 340.2 limitation, as we see in *Uram* v. *Abex Corp.* (1990) 217 Cal.App.3d 1425 [266 Cal.Rptr. 695]. Mr. Uram received a disability retirement from Mare Island in 1959 because, in his words, he " 'couldn't perform my duties so I was compelled to leave.' " (*Id.*, at p. 1431.) He then worked three years as a gardener. He did not work after 1965. In 1976, after undergoing lung surgery, he was advised that he had pulmonary fibrosis caused by asbestos exposure. That year he filed a workers' compensation claim, describing his injury for purposes of the 1959 disability retirement as " 'asbestos in the lungs.' " (*Id.*, at p. 1429.) From 1980 to 1982, there were other diagnoses relating to heart problems. He filed suit in 1987. Upholding the trial court's decision that Uram's action was time-barred, the reviewing court pointed out that section 340.2 does not require that diagnosis and disability occur contemporaneously or that asbestos be the sole cause of disability. (217 Cal.App.3d at p. 1432.) It concluded

that Uram "actually knew and believed in 1976 that his disability was caused or at least contributed to by asbestos exposure." (*Id.*, at p. 1434.) By that time his doctors had explained his lung problems and he had filed a claim for compensation based on his exposure, stating in the claim that his disability was caused by asbestos exposure. (*Id.*, at pp. 1434-1435.)

## B.   *Darden II Is Time-barred*

Not surprisingly, plaintiff urges that this case falls squarely in the *Duty* camp; GM, the *Uram* camp. We are not convinced that *Duty* applies to the facts of this case. Unlike the plaintiff in *Duty*, our retired plaintiff had already filed Darden I and collected substantial compensation for his injuries before he launched Darden II. In the first complaint, as in the present, plaintiff alleged he "is a worker" who "has used, handled or been otherwise exposed to . . . asbestos products" which exposure "caused severe and permanent injury . . . ." Moreover, as a proximate result of defendants' conduct, he "has incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses . . . ." Additionally, in the preliminary fact sheet submitted in Darden I, plaintiff identified "Friction-Automotive" as one of the industries involved and listed the Alameda Naval Air Station as one of the sites of exposure.

Unquestionably in 1987 when plaintiff initiated Darden I he "knew and believed" he had a claim for asbestos-related personal injury. He pursued the lawsuit against some defendants and got paid. Others, including GM, he never served, but instead waited another four years before pursuing them. Holding fast under these circumstances to the literal definition of "disability" would endorse a rule that encourages plaintiffs who have already elected to litigate their asbestos-related personal injury claim to avoid the normal consequences of civil procedure with a second, otherwise untimely, lawsuit. These consequences include the bar of the statute of limitations as well as mandatory dismissal for failure to serve (§ 583.210 et seq.) or prosecute (§ 583.310 et seq.). Such a result would subvert the general policy informing statutes of limitations and, on the other hand, would fail to serve the specific remedial policy which spurred the passage of section 340.2.

Indeed, courts will not blindly give effect to the letter of the law if doing so cuts against the legislative intent and spirit manifested in the statutory scheme. (*Duty* v. *Abex Corp., supra*, 214 Cal.App.3d at p. 751; see also *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259-260 [104 Cal.Rptr. 761, 502 P.2d 1049].) Stated differently, "[*i*]*n the absence of compelling countervailing considerations*, we must assume that

the Legislature 'knew what it was saying and meant what it said.' " (*Tracy* v. *Municipal Court* (1978) 22 Cal.3d 760, 764 [150 Cal.Rptr. 785, 587 P.2d 227], italics added.)

There are compelling reasons to go beyond the letter of the law in this situation. First, to fashion a loophole for multiple suits against the same defendant beyond the one-year bar would offend the purposes of statutes of limitations: namely, the promotion of repose (*Shain* v. *Sresovich* (1894) 104 Cal. 402, 406 [38 P. 51]) and the elimination of the surprise that comes through reviving of stale claims (*Telegraphers* v. *Ry. Express Agency* (1944) 321 U.S. 342, 348 [88 L.Ed. 788, 792, 64 S.Ct. 582]).

Second, such a rule would be out of synch with the general scheme of title 2 of the Code of Civil Procedure, Time of Commencing Civil Actions. Section 312 provides: "Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute." Under section 350, an action is commenced within the meaning of title 2 with the filing of a complaint.

Section 340.2 postpones accrual of the cause of action for injury from exposure to asbestos. Section 312 tells us an action cannot be started until it accrues. By filing Darden I in 1987 plaintiff voluntarily commenced an action within the meaning of section 350 and therewith admitted that his cause of action had accrued. Plaintiff in effect invoked the bar of section 340.2 and cannot later revoke it: if his cause of action accrued in 1987, it does not "unaccrue" in 1991 just because he attempted to deny accrual under the technical shelter of the very same statute.

Third, with the enactment of section 340.2, the Legislature intended to accommodate victims of asbestos-related disease by permitting deferred commencement of their actions until such disease prevents them from continuing to work. Thus, while the statute yields more time in which to bring suit, given the progressive nature of the disease, there is no intent to allow multiple suits beyond the one-year limit.

For all these reasons we hold that when an individual has already announced and pursued an asbestos-related personal injury claim with a prior lawsuit, and indeed in that suit has named but not served the very defendant then pursued at a much later date, that person does not escape the limitation of section 340.2. Rather, the statute starts to run upon filing the first lawsuit.

## C. *There Is No Substantial Evidence That Plaintiff Was Not Disabled in 1982\**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

We reverse the judgment. Parties to bear their own costs on appeal.

Poché, Acting P. J., and Perley, J.,† concurred.

A petition for a rehearing was denied November 16, 1995, and the petition of appellant Mae Darden for review by the Supreme Court was denied January 4, 1996.

---

*See footnote, *ante*, page 349.
†Retired Associate Justice of the Court of Appeal, First District, sitting under assignment by the Chairperson of the Judicial Council.