[No. A074293. First Dist., Div. Two. Sept. 19, 1997.]

ELBERT L. BARR, Plaintiff and Appellant, v.
ACANDS, INC., Defendant and Respondent.

[No. A073961. First Dist., Div. Two. Sept. 19, 1997.]

LAURENCE WILLS et al., Plaintiffs and Appellants, v.
ALTA BUILDING MATERIALS CO. et al., Defendants and Respondents.

[No. A076612. First Dist., Div. Two. Sept. 19, 1997.]

DARWYN BAESMAN, Plaintiff and Appellant, v.
EXXON CORPORATION, Defendant and Respondent.

**COUNSEL**

Brayton, Harley, Curtis, James L. Oberman, Philip A. Harley and Bryce C. Anderson for Plaintiffs and Appellants.

St. Peter & Cooper, M. Armon Cooper, Raymond L. Gill, Jackson & Wallace, Gabriel A. Jackson, Peter K. Renstrom, Dillingham & Murphy, Patrick J. Hagan, Edward E. Hartley, Michael Y. Lateef, Jacobs Associates, Marvin A. Jacobs and Mark B. Jacobs for Defendants and Respondents.

## OPINION

## RUVOLO, J.—

### INTRODUCTION

Appellants in these three consolidated cases appeal judgments entered in favor of respondents. Relying principally on *Darden* v. *General Motors Corp.* (1995) 40 Cal.App.4th 349 [47 Cal.Rptr.2d 580] (*Darden*), the trial courts determined as matters of law that appellants' claims arising out of occupational exposure to asbestos were barred by the statute of limitations set forth in Code of Civil Procedure[1] section 340.2 as a result of the filing of prior suits involving the same exposure. Appellants contend *Darden* was wrongly decided or is inapplicable to their respective cases. For the reasons stated in this opinion, we affirm all three judgments.

### PROCEDURAL AND FACTUAL BACKGROUND

Because these appeals concern three separate cases, the facts of each deemed pertinent to our determination are set out individually below.

*Barr v. ACandS, Inc.*

Appellant Elbert L. Barr worked as a hod carrier for 20 years at various industrial sites throughout the Bay Area. While so employed, he worked with and around asbestos-containing materials.

On January 16, 1986, Barr filed an action for personal injuries in Alameda County Superior Court against numerous defendants including respondent ACandS, Inc. (AC&S). In his complaint, Barr alleged he sustained personal injuries as a result of chronic occupational exposure to asbestos and that each of the defendants was legally responsible for his injuries by virtue of its participation in placing these products in the stream of commerce. Barr claimed this exposure "caused [him] severe and permanent injury . . . including, but not limited to, breathing difficulties, asbestosis, and/or other lung damages, and increased risk and fear of developing mesothelioma, lung cancer, and various other cancers." Barr alleged further that he was diagnosed with asbestos-related illness on or before October 22, 1985, and "disability within the meaning of [section] 340.2 either had yet to occur or occurred less than a year before the filing of this complaint."

---

[1]All further undesignated statutory references are to the Code of Civil Procedure.

AC&S was served with a summons and complaint, and filed its answer on June 13, 1986.

A trial setting conference was set for March 10, 1987, but Barr's counsel failed to appear and the case was ordered dropped from the "civil active list." Four years and six months after filing the complaint, Barr voluntarily dismissed his action without prejudice on June 11, 1990, "as to all remaining defendants; each side to bear its own costs."

On September 5, 1995, Barr filed a second action in San Francisco Superior Court out of which this appeal arises. This complaint once again sought personal injury damages resulting from Barr's chronic occupational exposure to asbestos products and materials. In addition to naming defendants who participated in the chain of manufacturing and sale of asbestos products, including AC&S, Barr added a premises liability cause of action against entities on whose property he was allegedly exposed to asbestos. Barr alleged precisely the same injuries and damages described in his first action, however, he claimed in the second action he was diagnosed with asbestosis and related illnesses "on or about February 1987." Barr further alleged he became disabled from his last place of employment for reasons other than any relating to his asbestos-related disease, and "[h]e has therefore suffered no disability from his asbestos-related disease as 'disability' is defined in [section] 340.2."

AC&S filed its answer on October 27, 1995. A motion for summary judgment was filed by AC&S on February 7, 1996. The sole ground for the motion was that Barr's second suit was barred by the statute of limitations provided in section 340.2, in accordance with the decision of Division Four of this district in *Darden*, *supra*, 40 Cal.App.4th 349.

Barr's opposition included a declaration from Attorney Jack Clapper, who had represented Barr in the earlier action. In his declaration, Mr. Clapper explained that in the 1980's, during which he had represented hundreds of plaintiffs seeking damages for asbestos-related disease, it was "frequent[ly]" proposed by defendants in cases involving "marginally impaired plaintiff[s]" that they dismiss their lawsuits with the understanding that the dismissing plaintiffs could refile in the event their asbestos-related disease process became more serious. In his declaration, Mr. Clapper further asserted that settlement judges suggested this procedure, and typically plaintiffs agreed to it rather than litigate and potentially recover only a nominal amount. He notes this was the "custom and practice" in asbestos litigation in "Northern California courts," and that all dismissals he negotiated under

these circumstances were filed with the understanding they were without prejudice to the filing of a subsequent action if the respective plaintiff chose to do so. Mr. Clapper concluded that many of his clients, including appellant, dismissed their suits with the express understanding they could "re-file a lawsuit in the event their disease worsened."

The summary judgment motion was granted on March 11, 1996, at the conclusion of an oral hearing. The court found as a matter of law that the statute of limitations provided for in section 340.2 had commenced running when Barr's first suit was filed, and Barr was thus precluded from filing the instant action. It also found there was no triable issue of fact under a theory that AC&S was estopped from asserting the limitations bar.

### Wills v. Alta Building Materials Co. and Kaiser Cement Corporation

Laurence and Thelma Wills (Wills) filed an action for asbestos-related personal injuries on March 27, 1986, in San Francisco Superior Court. Their suit named multiple defendants including respondent Kaiser Cement Corporation (Kaiser). The 1986 complaint alleged that Wills's "disability within the meaning of [section] 340.2 either had yet to occur or occurred less than a year before the filing of this complaint." This suit was pursued for approximately two years and was settled as to some defendants. Wills voluntarily dismissed their action against Kaiser without prejudice in July 1988 in exchange for Kaiser's waiver of costs.

On December 16, 1993, Wills filed a second action. This complaint alleged the same injuries and damages against both Kaiser and Alta Building Materials Co. (Alta), which was named as a defendant in the second suit, but not the first.

After the Court of Appeal decision in *Darden*, both Kaiser and Alta brought motions *in limine* to bifurcate trial under section 597 and to dismiss Wills's actions on the ground that they were barred by the statute of limitations. Wills argued in opposition that respondents were equitably estopped from asserting a statute of limitations defense.[2] Opposition included declarations by Attorneys Jack Clapper and Alan Brayton containing

---

[2]We reject Wills's contention that the mechanism employed by Kaiser and Alta to seek an adjudication of the statute of limitations defense was procedurally flawed. The sole procedural objection made by Wills was that the matter could only be resolved by way of a motion for summary judgment, and that such a motion was untimely. This is incorrect. The trial court appropriately granted respondents' motion to bifurcate and try the statute of limitations issue first, pursuant to section 597. The parties were afforded an opportunity to brief the statute of

averments nearly identical to those detailed above in connection with the motion for summary judgment in *Barr*. The trial court rejected Wills's arguments and decided as a matter of law that section 340.2 had commenced when Wills's first suit was filed. The motions were granted, and judgments of dismissal were entered in favor of Kaiser and Alta.

### Baesman v. Exxon Corporation

Darwyn Baesman filed his first lawsuit (*Baesman I*) on December 15, 1993. One of the locations identified in the *Baesman I* complaint at which Baesman claimed to have been exposed to asbestos was the Humble Oil Refinery in Benicia, California. Baesman identified his employer at the time as Chicago Bridge & Iron Company, and the time period during which he may have worked at the Humble Oil Refinery as between 1964 and 1973. Although the refinery's name was changed from Humble Oil to Exxon long before the complaint in *Baesman I* was filed, Exxon was not named nor served as a fictitious defendant in *Baesman I*. At the time of oral argument, *Baesman I* was still pending.

The second lawsuit (*Baesman II*) was filed on May 17, 1996. *Baesman II* alleged five causes of action based on the same alleged exposure to asbestos and asbestos-containing products as *Baesman I*. Baesman again identified the Humble Oil Refinery site as one of the locations at which he was exposed to asbestos between 1964 and 1973. However, based on these same site allegations, Baesman this time named respondent Exxon Corporation (Exxon) as a defendant and on May 31, 1996, Exxon was served with the complaint.

Exxon filed a motion for summary judgment, again arguing the one-year limitations period of section 340.2 started to run, at the latest, upon commencement of *Baesman I*. Therefore, since *Baesman II* was filed almost three years after *Baesman I*, the limitations period had indisputably expired and the *Baesman I* action against Exxon must be dismissed.

In opposition, Baesman conceded he previously filed a lawsuit in 1993 "based on the identical occupational exposure to asbestos claimed in the present action." Nevertheless, he insisted the complaint in *Baseman I* was premised on his "disease status at that time, namely *asbestosis* and *asbestos-related pleural disease*." (Original italics.) *Baesman II* was based on his

limitations issue and to present evidence by declarations on the estoppel defense raised by appellants. Upon submission, the court granted respondents' motion to dismiss since it was apparent from the face of the pleadings that the statute of limitations had run.

"subsequent contraction of *lymphoma*, a form of cancer." (Original italics.) Baesman argued his 1993 lawsuit based on his diagnosis of asbestosis did not commence the statute of limitations on his right to sue for injuries resulting from a separate and distinct disease, cancer, which did not manifest itself until 1996.

In attempting to defeat summary judgment, Baesman submitted a declaration from his expert witness in *Baesman I*, Dr. Carolyn S. Ray. Dr. Ray's declaration was based on her examination of Baesman at various intervals. Dr. Ray stated that as of October 2, 1992, Baesman was suffering from asbestos-related pleural disease. As of November 28, 1994, Baseman was still suffering from asbestos-related pleural disease as well as asbestosis. Dr. Ray's examination of Baesman on May 23, 1996, revealed he had developed a malignancy, lymphoma. Dr. Ray expressed her opinion that Baesman's lymphoma was causally related to his prior asbestos exposure. Baesman relied on Dr. Ray's declaration in contending his action against Exxon seeking recovery for cancer-related injuries did not accrue until 1996, when he was diagnosed with cancer, and therefore, his claim was not barred by section 340.2.

However, in reply, Exxon once again turned to the pleadings filed in *Baesman I* to illustrate *Baesman I* and *Baesman II* were identical in significant respects. *Baesman I* contained allegations Baesman had suffered cancer-related injuries, including an allegation that "[p]laintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the plaintiff, including, . . . *lung and/or other cancer*, . . ." (Italics added.) Exxon pointed out the allegations made in *Baesman I*, which Exxon claimed served as "judicial admissions," alleged the identical asbestos exposure and identical injuries—including cancer—as the allegations made in *Baesman II*.

Alternatively, Exxon argued Baesman could maintain only one indivisible cause of action against it for asbestos-related injuries. Therefore, even if Baesman could prove his claim of cancer was not alleged in *Baesman I*, the running of the statute would not be postponed because the statute does not begin to run anew for each successive injury caused by the same wrongful act. (See *Miller* v. *Lakeside Village Condominium Assn.* (1991) 1 Cal.App.4th 1611, 1622 [2 Cal.Rptr.2d 796].)

The trial court found section 340.2's one-year statute of limitations had been triggered by the filing of allegations of cancer-related injuries in *Baesman I* and that the instant action against Exxon alleging damages in connection with the identical exposure and injuries was untimely. After Baesman's motion for a new trial was denied, this appeal followed.

### DISCUSSION

#### A. *Overview*

 We are tasked with determining the efficacy of *Darden* to the filing of successive[3] lawsuits for asbestos exposure in cases involving three procedural permutations. In *Barr*, appellant filed serial suits against the same named and served defendant (AC&S) for the same injuries. *Wills* involved successive claims to recover for the same injuries against one defendant in the second action which had not been sued in the first (Alta), and one defendant (Kaiser) which had been sued and dismissed. Finally, in *Baesman* we must evaluate *Darden*'s applicability to a second action for allegedly *different* injuries caused by the same exposure claimed in the first suit, and against a defendant not sued in the prior action.

All appellants frontally contest the soundness of the *Darden* decision. We begin with a review of *Darden* in the context of the legislative history pertaining to the peculiar statute of limitations applicable to asbestos claims. Thereafter, we will examine what role, if any, the distinguishing procedural aspects of each of the three cases may have in applying governing legal principles. Finally, we will address appellants' estoppel and "fundamental fairness" arguments.

#### B. *The Commencement of Section 340.2 Against Prior Parties*

Section 340.2 was enacted in 1979. (Stats. 1979, ch. 513, § 1, pp. 1689-1690.) It provides in full as follows: "(a) In any civil action for injury or illness based upon exposure to asbestos, the time for the commencement of the action shall be the later of the following: [¶] (1) Within one year after the date the plaintiff first suffered disability. [¶] (2) Within one year after the date the plaintiff either knew, or through the exercise of reasonable diligence should have known, that such disability was caused or contributed to by such exposure. [¶] (b) 'Disability' as used in subdivision (a) means the loss of time from work as a result of such exposure which precludes the performance of the employee's regular occupation. [¶] (c) In any action for the wrongful death of any plaintiff's decedent, based upon exposure to asbestos, the time for commencement of an action shall be the later of the following: [¶] (1) Within one year from the date of the death of the plaintiff's decedent. [¶] (2) Within one year from the date the plaintiff first knew, or through the exercise of reasonable diligence should have known, that the death was caused or contributed to by such exposure."

---

[3]In *Barr* and *Wills*, the filing of the second lawsuits came approximately five years following the dismissal of the first suits. Because *Baesman I* has not been dismissed, Baesman's second action, while successive in time, is pending *concurrently* with *Baseman I*.

■ The legislative history reflects that the purpose for the special limitations period was to accommodate the long latency periods commonly experienced with asbestos-related illnesses. It noted asbestos-induced illnesses are progressive and might take years to develop fully from the time some degree of illness is first discovered. Under the traditional one-year statute of limitations, a plaintiff would be required to file suit within one year from the time the first manifestations of illness appeared, and long before any disability occurred. (§ 340.) Thus, a special statute of limitations was enacted only for asbestos claimants allowing them to file a complaint as late as one year from the time disability results. (Dept. of Industrial Relations, Enrolled Bill Rep. on Sen. Bill No. 564 (1979-1980 Reg. Sess.) Aug. 30, 1979, p. 1.)

We agree with the court's opinion in *Puckett* v. *Johns-Manville Corp.* (1985) 169 Cal.App.3d 1010 [215 Cal.Rptr. 726] (*Puckett*) that the legislative intent is indisputably clear. Confirming our own analysis, that court quoted the author of the Senate bill which became section 340.2 as follows: "In addition, the bill's author declared that the purpose of the enactment was ' ". . . to relieve victims of asbestos-related diseases from a potentially harsh application of the statute of limitations which was designed not for disease claims but for victims of traumatic injury. [¶] Under existing law, the statute of limitations for any action based on injury or death of a person caused by the wrongful act or neglect of another is one year from the date of the injury or death. It is important to know that the most serious of asbestos-related diseases often take from 15 to 35 years to develop. [¶] My bill provides that an action for injury or illness based upon exposure to asbestos is to be commenced within one year after the date the plaintiff first suffered disability therefrom and either knew or should have known such disability was caused by such exposure." ' " (169 Cal.App.3d at p. 1016.)

A series of later cases, all of which are discussed by the parties to these appeals, clarified the term "disability" and addressed the effect on the limitations period where no disability occurs. For example, *Puckett* held that temporary disability or absence from work did not commence the one-year limitations period. (*Puckett, supra*, 169 Cal.App.3d at pp. 1017-1018.) This division held in *Duty* v. *Abex Corp.* (1989) 214 Cal.App.3d 742 [263 Cal.Rptr. 13], that section 340.2 did not commence running until a claimant retired as a result of an asbestos-related illness. In instances where that event did not take place, the statute's one-year limitations period never commenced and suit could be filed at any time. However, if asbestos illness played a significant role in causing a permanent disability, the one-year period within which to file suit ran from the date of retirement. (See *Uram* v. *Abex Corp.* (1990) 217 Cal.App.3d 1425 [266 Cal.Rptr. 695].) In *Blakey* v.

*Superior Court* (1984) 153 Cal.App.3d 101 [200 Cal.Rptr. 52], the statute was declared retroactive to apply to all pending cases for which there had not already been a final determination that plaintiffs' claims were barred.

Appellants properly distinguish the limitations period defined in section 340.2 from the time of "accrual" of their claims. Although commentators have referred to this statute as providing for a "postponed accrual" date (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 525, p. 658), it is more accurately described as a statute of repose—a time in the future after which a claimant may not file suit because the claim becomes stale. (*Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103 [245 Cal.Rptr. 658, 751 P.2d 923].) Accrual of an action for personal injury, including that allegedly from asbestos exposure, normally occurs once a wrongful act causes injury in some appreciable amount. Of course, this general proposition may be complicated by delays in discovering either the wrongful conduct or damage which can act to postpone accrual of the claim. (See *ibid.*; *Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398 [163 Cal.Rptr. 711].)

The date of accrual is important because an action may not be filed until the underlying claim "accrues." Section 312 provides "[c]ivil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute." If a claim for personal injuries allegedly resulting from asbestos exposure could not accrue until disability occurred, it would lead to the anomalous result that plaintiffs who did not suffer disability as defined by the statute would be forever barred from filing suit. Under such a construction, to the extent each of the appellants here have alleged in their respective complaints that they have not yet suffered disability, all of the actions we have chronicled above would be premature.[4]

█ It was not until Division Four issued its opinion in *Darden, supra*, 40 Cal.App.4th 349, that the issue was addressed concerning what effect the filing of suit had on the commencement date of the one-year limitations period, if any. In *Darden*, the plaintiff retiree filed an action in 1987 for asbestos-related pleural disease that was first diagnosed in 1986. In June 1990, plaintiff settled with some defendants and dismissed his action without prejudice against unserved defendants including General Motors. In June 1991, he filed a virtually identical complaint against General Motors alleging the same injuries.

---

[4]As we will discuss *post*, the only disagreement we have with the *Darden* court is its characterization that the effect of filing an action for asbestos injury acts as an "accrual." (*Darden, supra*, 40 Cal.App.4th at p. 356.)

The *Darden* court found the filing of the first suit commenced the running of the one-year limitations period in section 340.2. Its holding was based on the following findings: (1) the intent of the Legislature in extending the normal limitations period was corrupted by the filing of a second suit for the same damages against the same parties; (2) the statute could not properly be used to avoid the normal procedural consequences of imperfect complaints such as mandatory dismissals for failure to serve and failure to prosecute; (3) there was no evidence the Legislature intended to sanction the filing of multiple lawsuits in enacting section 340.2; (4) commencement of suit constituted an admission by the plaintiff that his claim had "accrued;" and (5) traditional concern for preventing stale claims and imposing a date of repose for claims warranted the interpretation.[5]

We concur that nowhere did the Legislature intimate an intent to foster multiple suits under any circumstances when it enacted section 340.2. A fair reading of the legislative history supports only the conclusion that the state's lawmakers desired to allow claimants who alleged they were harmed by a progressive disease with a long latency period the *option* of waiting until diagnosis of the full course of their illness before being required to sue. However, it is entirely consonant with this intent to infer a similar desire not to bestow on a claimant who selects the option of suit the right to file seriatim lawsuits. Had the Legislature intended such a result, " '[i]n the absence of compelling countervailing considerations, we must assume that the Legislature "knew what it was saying and meant what it said." ' [Citation.]" (*Darden, supra*, 40 Cal.App.4th at pp. 355-356, italics omitted.) Thus, we agree with *Darden* that voluntary election to commence an action for damages triggers the running of the one-year limitations period specified in section 340.2. This election waives the longer limitations period provided for in that statute.

While we accept, as we must, the declaration of former counsel for *Barr* and *Wills* in which they explain the earlier custom of dismissing claims in order to save all parties time and expense, that procedural device is nevertheless reminiscent of the *Darden* court's concern for the avoidance of "the normal consequences of civil procedure with a second, otherwise untimely, lawsuit." (*Darden, supra*, 40 Cal.App.4th at p. 355.) We note the dismissal of the first action in *Barr* came only after the case was litigated for four and a half years, counsel had failed to appear at a trial setting conference, and only six months before expiration of the mandatory five-year dismissal date under section 583.310. AC&S is justified in questioning the appropriateness

---

[5]Despite Barr's oblique reference to the unpublished portion of the *Darden* decision, we note the court's holding did not in any way turn on whether Mr. Darden actually suffered a "disability" at the time his first action was filed.

of requiring it to defend against what Barr's counsel characterized as a "marginal" claim, only to have it dismissed voluntarily shortly before its mandatory dismissal date, and the identical suit filed again five years later.

In *Wills* and *Baesman*, the three-year time limit (§ 583.210) within which respondents could have been served as defendants had expired. Were we to interpret application of section 340.2 to allow successive suits, we would be aiding in the potential evasion of the involuntary dismissal statutes, and would be affording procedural protection available to no other class of litigants except those for whom the statute of limitations is *tolled* because of a disability. We agree with the *Darden* court that there are strong policies underlying the dismissal statutes which preclude the pursuit of stale or untimely claims. We see no intent evidenced by the Legislature to grant such exclusive status to the class of claimants to which appellants belong.

Appellants incorrectly analogize section 340.2 to a tolling statute, or one which suspends the running of a limitations period because of a disability. Section 340.2 is not a tolling statute, as are those set forth in series in part 2, title 2, chapter 4 of the Code of Civil Procedure. "If a person entitled to sue is under a 'disability' at the time the cause of action accrues, so that it is impossible or impracticable for him to bring an action, the time of the disability is not part of the time limited for the commencement of the action. Disability is said to 'toll' or suspend the running of the statute. [Citations.]" (3 Witkin, Cal. Procedure, *supra*, Actions, § 633, pp. 812-813.) There were certainly no statutorily recognized disabilities present here which prevented appellants from bringing suit once their claims accrued. Accordingly, it is inapposite to refer to section 340.2 as a "tolling statute."

For this reason cases involving minors' claims referenced by appellants are distinguishable. In *Van Buskirk* v. *Todd* (1969) 269 Cal.App.2d 680 [75 Cal.Rptr. 280] and *Billups* v. *Tiernan* (1970) 11 Cal.App.3d 372 [90 Cal.Rptr. 246], minor plaintiffs were allowed to file second suits within one year after reaching majority, where their earlier suits had been dismissed. The claims were held to be allowable under section 352, subdivision (a)[6] because the statute of limitations had been tolled during the entire period of their minority.

Similarly, appellants' attempted reliance on *Gonsalves* v. *Bank of America* (1940) 16 Cal.2d 169 [105 P.2d 118] is misplaced. In that case, an action

---

[6]Section 352, subdivision (a) states as follows: "If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335) is, at the time the cause of action accrued either under the age of majority or insane, the time of the disability is not part of the time limited for the commencement of the action."

was brought by the financial institution after borrowers allegedly defaulted on an obligation. That action was dismissed by the trial court when the lender failed to effectuate service on the borrower within the statutory time. The lender thereafter exercised a right of setoff against other funds the borrower had on deposit. A subsequent action was filed by the borrowers as a result of the seizure and the lender claimed a right to setoff. The Supreme Court ruled that the lender did not lose its equitable right to setoff because its earlier suit had been dismissed. These cases do not support the proposition attributed to them by appellants. There is nothing in this decision which would sanction the filing of multiple suits by personal injury claimants under the facts of the present cases.

Appellants alternatively argue we should declare *Darden* prospective only, so as to make its holding inapplicable to claimants who filed and dismissed actions prior to its effective date. We decline to do so.

■ Appellate decisions are virtually always accorded retroactive effect and apply to all cases pending at the time such decisions become final. (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24 [44 Cal.Rptr.2d 370, 900 P.2d 619].) While there have been a select few Supreme Court cases such as the decision cited by appellants in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58], where the rule of retroactivity has been altered, its application has been extremely limited. It was articulated in *Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973 [258 Cal.Rptr. 592, 772 P.2d 1059] (*Newman*) that endemic to the judicial function is the reality that creation of new rights applied retroactively may work to the detriment of defendants, and the elimination of rights retroactively may create a hardship to pending claimants. Faced with a request by plaintiffs not to apply retroactively the principle enunciated in *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373],[7] the Supreme Court in *Newman* rejected arguments much like those made by appellants here: "As we discuss, in a few additional cases circumscribed retroactivity has been imposed because of unique burdens that would otherwise arise. These cases presented compelling and unusual circumstances justifying departure from the general rule. In contrast, the sum and substance of the dissent's argument in this regard is (1) there was a rule of liability developing in the Courts of Appeal (which admittedly had not reached consensus on the elements of the cause of action); (2) litigants filed actions based on those decisions; and (3) litigants should not be denied their right to proceed with their lawsuit simply because this court disapproved the holdings of the intermediate appellate courts.

---

[7] *Foley* abrogated the tort remedy against an employer sued for wrongful termination by a former employee for the alleged breach of the implied covenant of good faith and fair dealing.

What this analysis ignores is that every time this court overrules authority developed in the lower courts, but not yet definitively determined, it affects expectations of litigants who stood to gain or lose under the approach taken below." (*Newman, supra,* 48 Cal.3d at p. 983.)

For another reason we need not quantify whether the hardship on appellants is greater than that visited on other litigants whose claims were abolished or whose liability was expanded because of the retroactive application of a judicial decision. Appellants have failed to cite a single case in which a Court of Appeal limited the retroactive application of its decision, let alone a case such as this where we are asked to limit the effect of a judicial opinion rendered by another Court of Appeal. We know of no decisions where the traditional retroactive effect of a judicial decision was altered to apply prospectively other than through pronouncements of the Supreme Court. For this reason alone, *Darden*'s application will remain unmodified by this court.

### Barr claim

 In light of our analysis, we conclude there is no rational basis upon which to distinguish *Barr* from *Darden*, and find it wholly applicable. If anything, the facts here are more compelling. Unlike General Motors, which was not served in the earlier action in *Darden* and bore no expense in connection with the prior claim, AC&S was served and was required to defend the action for four and a half years before it was dismissed. While this class of personal injury claimants has been provided with a deferred statute of limitations "commencement" date, exercise of the prerogative of filing suit earlier than the outside time limit specified in the statute bars a later action against parties named or served in the first action.

### Wills claim

The feature distinguishing *Wills* from *Barr* is that while Kaiser was a defendant in the first action filed by Wills, Alta was not. Thus, Wills argues the policy reasons which may apply so as to deny a plaintiff the right to file a second action against defendants required to defend an earlier action, have no applicability to a separate suit against previously unserved defendants. The "commencement" may have occurred as to served parties, but there has been no election to sue as to those defendants included only in the subsequent action.

As noted above, the relationship between Wills and Alta is no different from the relationship between plaintiff and General Motors in *Darden*.

General Motors was never served in the first action, although named. As we have said, we accept the reasoning of *Darden* and follow it here. The limitations period of one year commencing with the filing of a first action applies to all potentially responsible defendants whether or not they are actually named in the first action.

To hold otherwise would eviscerate the dismissal statutes by allowing untimely claims to be asserted in separate actions. Such procedural circumvention was certainly not presaged in the Legislature's passage of section 340.2. Because we hold section 340.2 was intended solely to delay the time within which asbestos injury claims are commenced, the exercise of the option to sue sooner rather than later satisfies the lawmakers' concern for the belated incubation of asbestos illnesses, and, once elected, requires prosecution against all potentially responsible parties in a single action.

*Baesman claim*

Our analysis relative to the *Wills* claims applies equally to *Baesman*, except we must also address Baesman's contention that his second action sought damages for a different and distinct injury from that alleged in his first action. For this reason, Baesman contends *Darden* is inapposite. He argues we should instead follow the recent Division Five decision in *Richmond* v. *A.P. Green Industries, Inc.* (1997) 55 Cal.App.4th 565 [64 Cal.Rptr.2d 199] (*Richmond*).[8] In that case, plaintiff filed his first action in 1983 seeking recovery for "asbestosis, other lung damage, and cancer." Defendant Green was not served in the earlier case. In 1994, a new action was filed against Green and others alleging that plaintiff contracted mesothelioma, a virulent form of asbestos-related cancer, as a result of the same exposure. After reviewing cases from other jurisdictions, Division Five concluded a second suit for separate injuries was not barred by section 340.2, because a new commencement date attached to each such separate claim.

Exxon argued below, as it does on appeal, that Baesman's second suit does not arise from a separate injury but seeks damages instead for the very same injuries alleged in his first action. The trial court believed that in deciding the issue it should look no further than the pleadings in *Baesman I*, particularly the allegations that Baesman's exposure to asbestos or asbestos-containing products at the Humble Oil Refinery site caused him severe and

---

[8]A petition for review in this case is presently pending before the Supreme Court (S062813).

permanent injury, including cancer.[9] Therefore, the trial court would not consider evidence Baesman offered contradicting his prior pleading in an effort to raise a material issue of fact as to when his cause of action against Exxon commenced.

On appeal, Baesman refers to the same extrinsic evidence, arguing a triable issue of fact exists as to whether he had actually been diagnosed with cancer when he filed *Baesman I* in 1993. He once again relies on the declaration of his expert witness indicating the results of her 1996 examination of Baesman first revealed cancer, and the "preliminary fact sheet" attached to the complaint in *Baesman I* which identifies his injuries as "asbestosis and asbestos-related pleural disease."[10] He notes it would be unfair to apply the indivisible cause of action theory to the progressive nature of asbestos-related diseases because one discrete disease may not sequentially follow another, if it ever appears. Baesman argues he has a separate claim and a separate one-year limitations period for each distinct injury, including cancer, and that his case falls within the exception so recognized in *Richmond, supra.*

We need not decide the intriguing question of whether *Richmond*'s determination that asbestos-caused cancer constitutes a separate and distinct injury to which a separate limitations period applies was correct.[11] We agree with the trial court that Baesman is bound by the allegation contained in his first complaint that he had contracted asbestos-induced cancer. In fact, Baesman's counsel admitted he sought damages for his cancer against the nonsettling defendants in *Baesman I*. At oral argument, the trial court drove this point home by asking, "as I understand it, you are seeking cancer damages against some of those defendants in that first case; are you not?" Defense counsel replied, "I would assume so."

"A defendant moving for summary judgment may rely on the allegations contained in the plaintiff's complaint, which constitute judicial

---

[9]When the issue was argued, the court noted: "What you say to the court in lawsuit number one is 'I'm suffering from cancer,' and you don't name Exxon in that case, even though you knew of the prior employment relationship that the plaintiff had to Exxon. And then three years after the first lawsuit was filed, while the first lawsuit was then still pending, you file a second lawsuit and claim damages caused by exposure to asbestos including cancer. [¶] My question is, well, you said in 1993 you had cancer. You can't be saying in 1996 that, I didn't know that I had cancer in 1993."

[10]We note by order of the San Francisco Superior Court, this "preliminary fact sheet" is to be used "for informational and administrative purposes only and shall not be used by any party as evidence or for impeachment purposes." Therefore, even if we were so inclined, we will not consider this "preliminary fact sheet" for the purpose for which it has been tendered.

[11]Nor do we need to explore the importance, if any, arising from the factual distinction between the later development of mesothelioma in *Richmond* and lymphoma in *Baesman*.

admissions. As such they are *conclusive concessions of the truth of a matter and have the effect of removing it from the issues.*" (*Uram* v. *Abex Corp.*, supra, 217 Cal.App.3d at p. 1433, italics added; *Heater* v. *Southwood Psychiatric Center* (1996) 42 Cal.App.4th 1068, 1079-1080, fn. 10 [49 Cal.Rptr.2d 880]; *Miller* v. *Lakeside Village Condominium Assn.*, supra, 1 Cal.App.4th at p. 1623.) Nevertheless, at oral argument appellant's counsel argued Baesman's prior claim that he was suffering from cancer was simply an evidentiary presumption which he could rebut by extrinsic evidence. It is apparent counsel for Baesman has misconstrued the scope of the evidentiary exception invoked to refute allegations made in a complaint. Contradictory evidence is limited to that which collaterally attacks the prior judicial admission on the basis of mistake, inadvertence, or lack of authority. (*Magnolia Square Homeowners Assn.* v. *Safeco Ins. Co.* (1990) 221 Cal.App.3d 1049, 1061 [271 Cal.Rptr. 1].)

Here, there is no indication in the record that the pleading of cancer in Baesman's initial lawsuit was the product of mistake or inadvertence. In fact, his counsel has expressed an intention to rely on that allegation in seeking cancer damages against the remaining defendants to that action. Therefore, we conclude in this case and on this record Baesman is bound by his earlier pleading.

## C. *Estoppel*

Barr and Wills alternatively argue summary judgment was imprudently granted because there remain triable issues of fact as to whether AC&S and Kaiser were estopped to assert the statute of limitations as a bar to the second suits.[12]

 The doctrine of estoppel to plead the statute of limitations as a defense may be properly invoked where a defendant by his or her conduct induces a plaintiff to forbear from pursuit of a timely claim. (3 Witkin, Cal. Procedure, *supra*, Actions, § 685, pp. 872-873.) In a general sense the defense of estoppel has been described as follows: " 'One cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought.' " (*Carruth* v. *Fritch* (1950) 36 Cal.2d 426, 433 [224 P.2d 702, 24 A.L.R.2d 1403].)

---

[12]Appellants do not argue on appeal that respondents have *waived* the statute of limitations. A waiver defense is manifestly inappropriate because there has been no contention in the trial court that a written waiver was executed. The parties do not contest that such waivers must be in writing. (§ 360.5.) Wills's estoppel argument also cannot apply to Alta, which was not a party to the earlier suit.

In *California Sav. etc. Soc.* v. *Culver* (1899) 127 Cal. 107 [59 P. 292], plaintiff sued upon defendant's default on a mortgage after plaintiff declared the note accelerated. Defendant agreed to pay the arrearages, and the parties stipulated to a dismissal of the action. Defendant again defaulted and in a subsequent suit claimed the action was barred by the statute of limitations which commenced upon the earlier election to seek foreclosure. Justice McFarland concluded for a unanimous court that the defendant was estopped from relying on the statute of limitations because his conduct in inducing the plaintiff from dismissing the earlier action amounted to an estoppel. (*Id.* at p. 113.)

Similarly, it was decided in *Ginns* v. *Savage* (1964) 61 Cal.2d 520 [39 Cal.Rptr. 377, 393 P.2d 689], that a delay in bringing a timely suit which was the result of defendant's nonfraudulent confirmation that plaintiff had two extra days within which to file a petition for writ of mandamus, estopped defendant from subsequently claiming the filing was untimely.

Respondents principally rely on *Muraoka* v. *Budget Rent-A-Car, Inc.* (1984) 160 Cal.App.3d 107 [206 Cal.Rptr. 476] (*Muraoka*) to support their argument there is no conduct by them which would give rise to an estoppel defense. In *Muraoka*, the court noted the following elements must be present for there to be an estoppel: " '[b]efore an estoppel to assert an applicable statute of limitations may be said to exist, certain conditions must be present: "[T]he party to be estopped must be apprised of the facts; the other party must be ignorant of the true state of facts, the party to be estopped must have intended that its conduct be acted upon, or so act that the other party had a right to believe that it was so intended; and the other party must rely on the conduct to its prejudice." (*California Cigarette Concessions, Inc.* v. *City of Los Angeles*, 53 Cal.2d 865, 869 . . . ; citing *Safway Steel Products, Inc.* v. *Lefever* [(1953)] 117 Cal.App.2d 489, 491 . . . .)' (*Sumrall* v. *City of Cypress* (1968) 258 Cal.App.2d 565, 569. . . .)" (*Muraoka, supra,* 160 Cal.App.3d at p. 116.) However, the conduct which forms the estoppel need not be fraudulent, performed in bad faith, or with an intent to mislead the plaintiff. (*Industrial Indem. Co.* v. *Ind. Acc. Com.* (1953) 115 Cal.App.2d 684, 690 [252 P.2d 649].)

 Applying these principles in reviewing the record below, we conclude there were no facts raised in opposition to respondents' motions to support an estoppel defense as to *these* defendants. Assuming the events described by appellants' counsel expressly or by inference could otherwise satisfy the requirements for estoppel, there is absolutely no mention in Mr. Clapper's or Mr. Brayton's declarations, or in any other evidence presented in connection with respondents' motions, that AC&S or Kaiser representatives made any representations to appellants to induce them to dismiss their

actions. Barr and Wills do not identify any of the parties who participated in the "customary" practice of agreeing to dismissals in return for an agreement that a future suit could be filed. The dismissals filed in the first actions referred simply to "all remaining defendants," and we, like the trial courts, are left to speculate whether respondents made any representations to appellants in order to induce them to dismiss their complaint *as to AC&S or Kaiser.*

The trial judge raised this point during oral argument in *Barr* and specifically offered appellant Barr the opportunity to amend his complaint, which apparently was declined. Counsel was asked what evidence supported an estoppel as to AC&S, to which counsel replied that because litigants were generally reaching this understanding and a dismissal was in fact given to respondent in exchange for a waiver of costs, it must have induced appellant to dismiss in return for a promise not to assert the statute of limitations if a second suit was subsequently filed. This offer of proof is simply insufficient to raise a triable issue of fact that AC&S is estopped to plead a time limitations bar in response to the second action.

At the hearing on the motions to dismiss in *Wills*, counsel again was asked what evidence existed that the specific conduct of Kaiser led to the dismissal of Wills's first complaint. Counsel was unable to direct the court to any such evidence and merely repeated the "custom" in asbestos-litigation generally to encourage the dismissal of marginal cases with a recognition that a later suit may be filed if more significant symptoms develop. This assertion is also insufficient to raise an issue of fact preventing a dismissal in Kaiser's favor on the basis of an estoppel theory.

D. *"Fundamental Fairness" Argument*

We next address Baesman's "fundamental fairness" argument premised on of the San Francisco Superior Court General Order No. 27. As it appears in the record, general order No. 27 prohibits asbestos plaintiffs in noncancer injury cases from recovering damages for an "increased risk of [developing] cancer arising from an asbestos exposure." A memorandum opinion filed on April 10, 1985, as a means of explaining the court's reasons for issuing general order No. 27, provides that the statute of limitations will not bar the subsequent lawsuit of any such plaintiff who later is diagnosed with cancer. Specifically, the court states: "If the plaintiff in a *non-cancer asbestos injury case* is to be precluded from recovery for increased risk of cancer, elementary fairness requires the assurance that upon contracting the disease he will not be legally barred from pursuing a remedy if and when cancer develops." (Italics added.)

Baesman indicates he should be entitled to the benefit of this reasoning, arguing "fundamental fairness requires that plaintiffs who have been precluded from pursuing increased-risk-of-cancer claims not be barred from obtaining redress when they are later diagnosed with asbestos-caused cancer." Neither general order No. 27 nor the 1985 memorandum opinion are applicable to this case. The potential unfairness resulting from being unable to plead "risk of cancer" and "fear of cancer" claims when cancer later develops has no relevance in cases like *Baesman I in which cancer-related injuries are actually alleged.*

We also reject Baesman's argument that his "second action is, in essence, a mere continuation of the first, and should be considered filed as of the date of the first under the equitable-tolling doctrine." (Fn. omitted.) In *Addison* v. *State of California* (1978) 21 Cal.3d 313 [146 Cal.Rptr. 224, 578 P.2d 941], our Supreme Court set out the requirements required to invoke the application of the doctrine of equitable tolling. They are "timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." (*Id.* at p. 319.) None of these elements are met. Baesman filed and prosecuted *Baesman I* for almost three years without naming or serving Exxon, even though Exxon's identity was known or easily discoverable at the outset. Exxon was not served with any complaint in this action until several years after the limitations period had expired, which Exxon claims resulted in surprise and prejudice. Thus, on this record, Baesman is not entitled to invoke the doctrine of equitable tolling.

### DISPOSITION

In light of the foregoing we affirm the trial court judgments entered in favor of respondents. Costs on appeal are awarded to respondents.

Kline, P. J., and Lambden, J., concurred.

The petitions of all appellants for review by the Supreme Court were denied December 23, 1997. Mosk, J., Kennard, J., and Werdegar, J., were of the opinion that the petitions should be granted.