[No. B007863. Second Dist., Div. One. July 8, 1985.]

RALPH PUCKETT, Plaintiff and Appellant, v.
JOHNS-MANVILLE CORPORATION et al.,
Defendants and Respondents.

## COUNSEL

Girardi, Keese & Crane, James B. Kropff and Christopher P. Regan for Plaintiff and Appellant.

Joseph Bogan, Mary K. Jones, Norby & Brodeur, Alfred G. Lucky, Jr., Patrick M. Kilker, Morgan, Wenzel & McNicholas, David E. Campana, Stearns & Nelson, Rolf F. Teuber, Paul, Hastings, Janofsky & Walker, Douglas C. Conroy, Pamela M. Woods, Chase, Rotchford, Drukker & Bogust, Richard S. Kemalyan, Christopher B. Townsley, Coyle, Marrone & Robinson, Fred Krakauer, Adams, Duque & Hazeltine, Richard C. Field, Catherine Hunt Ruddy, Yusim, Stein & Hanger and Andrew D. Stein for Defendants and Respondents.

## OPINION

**HANSON (Thaxton), Acting P. J.**—Plaintiff Ralph Puckett filed a complaint for personal injuries against numerous corporate defendants, including the GAF Corporation, as the result of his toxic exposure to asbestos. After answering the complaint and completing some discovery, including the deposition of plaintiff,[1] defendants brought a joint motion for summary judgment, claiming that plaintiff's complaint was not a timely one and had been barred by the one-year statute of limitation set forth in Code of Civil Procedure section 340, subdivision (3).[2] The trial court granted defendants' motion. Plaintiff has appealed from the judgment; we reverse.

### FACTS

The pertinent facts underlying this dispute are not controverted, although the inferences and conclusions to be drawn from them are. Briefly, it appears that plaintiff ingested substantial amounts of asbestos while working

---

[1]This document is part of our record, pursuant to the stipulation of the parties. (See Cal. Rules of Court, rule 125(e).)

[2]This section provides one year for bringing suit after, inter alia, "injury to or for the death of one caused by the wrongful act or neglect of another, . . ."

in and around warehouses and ships as an employee of defendants Owens-Corning Fiberglass Corporation and Johns-Manville Corporation from 1947 and 1956. In 1956, plaintiff left his employment with Johns-Manville to engage in a new occupation, construction estimating.

On February 26, 1977, plaintiff missed work due to a respiratory ailment. On March 2, 1977, plaintiff was admitted for pulmonary and lung testing at Community Hospital, Long Beach, by Robert Lugliani, M.D. Lugliani diagnosed plaintiff's condition as asbestosis. Plaintiff was released from the hospital about a week later, and the only treatment prescribed was periodic physical checkups, rest and the general suggestion was made that he take care of his health. On March 3, 1977, plaintiff returned to his job.

On July 28, 1978, plaintiff was examined by another physician, Reuben Merliss, M.D., who concurred in the diagnosis by Dr. Lugliani of asbestosis; plaintiff received a recommendation that he have regular physical examinations, take vitamins, control his weight, etc.

In 1979, plaintiff was again under the care of Dr. Lugliani; medication was prescribed, and plaintiff underwent physical therapy for a short period of time; the same general directions concerning health care were given.

Plaintiff filed this complaint on March 30, 1979. In his complaint, he alleged that he "was prevented from attending to his usual occupation, and plaintiff is informed and believes, and thereupon alleges, that he will thereby be prevented from attending to his usual occupation for a period of time in the future. . . ." When plaintiff's deposition was taken in 1983, plaintiff was still employed at his usual occupation, that of a construction estimator.

In seeking summary judgment, defendants contended that plaintiff's causes of action were subject to the limitation period of section 340, subdivision (3). (See fn. 2, *supra*.) They argued that plaintiff had become informed of his condition as early as February 1977—but had failed to file suit until March 30, 1979, and was thus barred from recovery; defendants made the assumption that the accrual of plaintiff's causes of action commenced the running of the statute from the time of his receipt of Lugliani's diagnosis. (See *Velasquez* v. *Fibreboard Paper Products Corp.* (1979) 97 Cal.App.3d 881, 885-889 [159 Cal.Rptr. 113].[3]

---

[3]It has long been established that summary judgment procedure, pursuant to Code of Civil Procedure, section 437c, has as its objective ascertaining the existence of triable issues of fact which requires "the weighing procedures of a trial." (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 20 [112 Cal.Rptr. 786, 520 P.2d 10].) *Velasquez* held, among other things, that whether or not a plaintiff had in fact received a diagnosis which informed him sufficiently of his true condition is ordinarily such a triable issue.

Plaintiff sought to invoke the enlarged statute of limitations for asbestos victims enacted by the Legislature in 1979 and effective January 1, 1980. It is set forth in Code of Civil Procedure section 340.2 (Stats. 1979, ch. 513) and provides: "(a) In any civil action for injury or illness based upon exposure to asbestos, the time for the commencement of the action shall be the later of the following:

"(1) Within one year after the date the plaintiff first suffered disability.

"(2) Within one year after the date the plaintiff either knew, or through the exercise of reasonable diligence should have known, that such disability was caused or contributed to by such exposure.

"(b) 'Disability' as used in subdivision (a) means the loss of time from work as a result of such exposure which precludes the performance of the employee's regular occupation.

"(c) In an action for the wrongful death of any plaintiff's decedent, based upon exposure to asbestos, the time for commencement of an action shall be the later of the following:

"(1) Within one year from the date of the death of the plaintiff's decedent.

"(2) Within one year from the date the plaintiff first knew, or through the exercise of reasonable diligence should have known, that the death was caused or contributed to by such exposure."

The trial court rejected plaintiff's contention that the new statute applied to his case. As the minute order of the court declares, the trial court relied on the prior limitation statute, section 340, subdivision (3), and determined that plaintiff was barred from recovery by the untimely filing. Thus, judgment was awarded defendants.

We have concluded that the trial court applied the wrong statute to plaintiff's causes of action, and we reverse the judgment rendered below.

DISCUSSION

I.

*Legislative Intent*

The general principles for determining legislative intent concerning the exclusively prospective or retroactive application of a statute have been

set forth in *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371], by the California Supreme Court. There it is explained that "[a]lthough legislative enactments are generally presumed to operate prospectively and not retroactively [fn. omitted; citations], this presumption does not defy rebuttal. We have explicitly subordinated the presumption against the retroactive application of statutes to the transcendent canon of statutory construction that the design of the Legislature be given effect. [Citation.]" *Bouquet* sets forth some of the sources to which a reviewing court may look to determine the issue of retroactivity, including (1) the language of the statute itself; (2) the intention of the framers of the specific enactment; and (3) in the absence of statutory language, "[a] wide variety of factors . . . 'such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction.' [Citations.]" (*Ibid.*)

The matter before us, and the statute under scrutiny demonstrate the difficulties inherent in fashioning a statute of limitations applicable to causes of action seeking redress for injuries resulting not from a traumatic incident but from a progressive, gradually disabling disease.

There is no doubt that plaintiff herein was advised as early as February 1977 that he was suffering from asbestosis, due to conditions of his employment extant over 20 years earlier. At the time of that diagnosis, however, plaintiff was apparently only mildly affected by the condition, and returned to work very shortly thereafter. Over the next two-year period he sought medical attention sporadically but received only the most general of directions relative to his health. There is evidence, too, that plaintiff has a history of problems with weight control and of smoking cigarettes. What is also suggested by the medical history available is that plaintiff, as a reasonably concerned person, may very well have lacked comprehension concerning the potential severity of his disease; the disease, which is progressively disabling, had just begun to disclose itself in 1977. Indeed, at the time plaintiff filed his lawsuit in 1979 and through the taking of his deposition in February 1983, he was still employed at his regular occupation, that of a construction estimator. We have not been called upon to decide the possible prematurity of plaintiff's claim, but only whether it could be appropriately terminated by a summary judgment.

■ Our Legislature has attempted to redress the problem of the gradually progressive nature of the disease by enacting the special statute of limitations for victims of asbestosis, section 340.2. Both language in the enactment and the remarks of the author of the legislation support the conclusion that the Legislature intended the special statute to be remedial in purpose, subject not only to liberal construction but to retroactive application in a

manner which would encompass the causes of action of as many victims of asbestosis as possible.

The bill which created section 340.2 set forth in section 2, at page 1690 [Stats. 1979, ch. 513], that "[t]he provisions of this act shall apply to those causes of action which accrued prior to the change in the law made by this act and have not otherwise been extinguished by operation of law." Clearly, this language demonstrates that retroactivity was intended. .

In addition, the bill's author declared that the purpose of the enactment was "'. . . to relieve victims of asbestos-related diseases from a potentially harsh application of the statute of limitations which was designed not for disease claims but for victims of traumatic injury. [¶] Under existing law, the statute of limitations for any action based on injury or death of a person caused by the wrongful act or neglect of another is one year from the date of the injury or death. It is important to know that the most serious of asbestos-related diseases often take from 15 to 35 years to develop. [¶] My bill provides that an action for injury or illness based upon exposure to asbestos is to be commenced within one year after the date the plaintiff first suffered disability therefrom and either knew or should have known such disability was caused by such exposure.'"

Both the language of section 2 and the remarks made by the author of Senate Bill No. 564 creating section 340.2 are derived by us from *Blakey* v. *Superior Court* (1984) 153 Cal.App.3d 101, 105 [200 Cal.Rptr. 52], the first published opinion interpreting 340.2 and dealing with a similar issue of retroactivity. *Blakey* concluded, as do we, that plaintiffs such as Puckett were entitled to the benefit conferred by the enlarged special statute of limitations.

■ With respect to the retroactivity of the cause, one final issue remains. Defendants argue on appeal that section 2 of the original enactment demonstrates that the Legislature did *not* intend to extend retroactive application to cases which had "been extinguished by operation of law"—and assert that plaintiff's matter falls within that category. We disagree. On the effective date of section 340.2, January 1, 1980, plaintiff's action had been on file at the superior court for some eight months. No adjudication had been made of the claim. It was "pending," i.e., awaiting disposition. Defendants rely on the premise that a claim ultimately found to have no merit due to some defect, technical or otherwise, is "extinguished by operation of law." There is no automatic, magical disposition of a complaint on file in our courts; some action, of varying kind depending upon the situation, is required to remove it from a court's consideration. Our view is shared by *City of Los Angeles* v. *Superior Court* (1977) 73 Cal.App.3d 509, 512-514

[142 Cal.Rptr. 292], an opinion which held that an action is considered "pending" with respect to a newly enacted and enlarged statute of limitations if the timeliness of the claim with reference to the prior, shorter statute of limitations has not been *adjudicated* before the effective date of the enlarging statute. *Blakey, supra,* 153 Cal.App.3d at page 106, also relied on *City of Los Angeles, supra,* 73 Cal.App.3d 509, when it expressly held that in order to extinguish a pending cause of action "by operation of law," adjudication was required. Since plaintiff's claim had not been adjudicated at the time section 340.2 became effective, his claim must be considered in light of section 340.2.

## II.

██ Both sides to this dispute have presented argument concerning the point at which a cause of action accrues pursuant to section 340.2, and the limitation period commences to run. As subdivisions (a)(1) and (a)(2) of section 340.2 make clear, a plaintiff has one year to file from the date of disability *or* from the time he knew, or through the exercise of reasonable diligence should have known that his disability was caused by asbestosis.

"Disability" is defined in the section as "the loss of time from work as a result of such exposure which *precludes* the performance of the employee's regular occupation." (Italics added.) Again we agree with the *Blakey* analysis that, in an effort to deal with the danger that the statute would run before an asbestosis victim really comprehended his condition, the Legislature introduced a special factor into asbestos litigation, i.e., the concept of disability as defined therein, to determine a fair accrual date. We have concluded that "disability" as used in the context of section 340.2 was not intended by the Legislature to be construed in exactly the same way, for example, as it might be in workers' compensation law. The language of section 340.2, considered in light of its remedial purpose, suggests that "disability" as used therein was intended to refer to a permanent termination of an individual's capacity to perform the tasks involved in his or her regular occupation rather than to some temporary interference with that capacity.

Defendants point to the two weeks off work taken by plaintiff in 1977 as the point at which plaintiff herein became "disabled" within the meaning of section 340.2. We disagree. Nor are we convinced that plaintiff had any real comprehension of what the potential threat might be to his health in the future, although the receipt of several medical opinions consistent with one another would appear to be adequate to put a plaintiff on notice of the realities of his condition. We hesitate, however, to fashion a rule which embraces an early accrual date for the cause of action to which asbestosis

victims are entitled. Such individuals should work as long as they are well enough to do so, without placing their recovery rights in jeopardy.

For the purpose of this litigation, it is sufficient to hold that plaintiff's case fell within the special statute of limitations provided for in section 340.2 as retroactively applied; that he, plaintiff, was not disabled within the meaning of section 340.2 in 1977; and that the trial court erred when it applied to plaintiff's matter the more limited one-year statute, section 340, subdivision (3). We reverse the judgment.

### Disposition

The judgment is reversed.

Lucas, J., and Dalsimer, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.