95 Cal.Rptr.2d 701 (2000)
22 Cal.4th 1127
998 P.2d 403
Linda HAMILTON, et al., Plaintiffs and Respondents,
v.
ASBESTOS CORPORATION, LTD., Defendant and Appellant.
No. S069596.
Supreme Court of California.
May 15, 2000.
Rehearing Denied July 19, 2000.[*]
*703 Parker & Bonis, James C. Parker, San Francisco; Stevens, Drummond & Gifford, Gary T. Drummond, Walnut Creek; Adams, Nye, Sinunu, Walker, James N. Sinunu, Barbara R. Adams, San Francisco, and Paul R.H. Walker, Los Angeles, for Defendant and Appellant.
Haight, Brown & Bonesteel, Roy G. Weatherup, William J. Sayers and Caroline E. Chan, Santa Monica, for Center for Claims Resolution as Amicus Curiae on behalf of Defendant and Appellant.
Brayton, Harley, Curtis, Brayton, Purcell, Curtis & Geagan, James L. Oberman, Oakland, Gilbert L. Purcell, James Geagan, Novato, Joanne E. K. Larson, San Francisco; Kazan, McClain, Edises, Simon & Abrams and Philip A. Harley, Oakland, for Plaintiffs and Respondents.
Rose, Klein & Marias, David A. Rosen, Los Angeles, Gideon Kracov; Ian Herzog, Santa Monica; Leonard Sacks, Granada Hills; Bruce Broillet; Thomas Stolpman, Long Beach; Robert B. Steinberg, Los Angeles; Roland Wrinkle, Woodland Hills; Gary Paul, Santa Monica; Steven Kleifeld; Harvey Levine; James Sturdevant, San Francisco; Wayne McClean, Woodland Hills; William Turley; Christine Spagnoli; and LeeAnn Tratten for Consumer Attorneys of California Amicus Curiae Committee as Amicus Curiae on behalf of Plaintiffs and Respondents.
Morgenstein & Jubelirer and Bruce A. Wagman, San Francisco, for Owens-Illinois, Inc., as Amicus Curiae on behalf of Plaintiffs and Respondents.
Wartnick, Chaber, Harowitz, Smith & Tigerman, Harry F. Wartnick, San Francisco; Law Office of Daniel U. Smith, Daniel U. Smith, Los Angeles, and Ted W. Pelletier, for Asbestos Victims of America as Amicus Curiae for Plaintiffs and Respondents.
*702 MOSK, J.
In this case we determine primarily whether a special statute of limitations for injury or illness caused by exposure to asbestos (Code Civ. Proc., § 340.2) bars an action for a certain asbestos-related disease brought by a worker who retired before suffering a disability as defined by the statute. The Court of Appeal held the action was barred because the plaintiff had brought an earlier action against the same defendant for a different disease arising from the same asbestos exposure. As will appear, we conclude that the second action is not time-barred and hence the judgment of the Court of Appeal must be reversed.

Facts
For two decades beginning in the early 1940's, plaintiffs' decedent Arthur Mitchell was employed in various industrial workplaces where he was exposed to asbestos. Mitchell's exposure to asbestos ended in 1963 when he went into business for himself as a television repairman. Nevertheless, in the late 1970's he began experiencing shortness of breath. In 1979 his condition was diagnosed as asbestosis, a noncancerous, chronic breathing impairment common in workers who have suffered prolonged exposure to asbestos. Despite his condition, Mitchell was able to continue working in his television repair business for another decade. He retired in 1989, not because of breathing difficulties but because he had reached the normal retirement age of 65 and was "tired of working."

Mitchell I
Mitchell's shortness of breath, however, gradually grew worse. On October 13, *704 1993, he filed an action in San Francisco Superior Court (case No. 955576, hereafter Mitchell I) against Asbestos Corporation, Ltd., and numerous other defendants involved in making, selling, or using asbestos products. The complaint was served on some two dozen of the named defendants, but Asbestos Corporation was not among them.
The Mitchell I complaint primarily alleged that Mitchell's exposure to asbestos caused him to suffer "breathing difficulties, asbestosis, and/or other lung damage."[1] The complaint then specifically alleged that "Plaintiff was diagnosed with asbestosis and asbestos-related pleural disease on or about 1979." The complaint prayed for compensatory and punitive damages.

Mitchell II
In December 1995, before trial began in Mitchell I, Mitchell began to experience abdominal pain. A month laterin January 1996exploratory surgery became necessary, and it revealed a cancerous growth throughout Mitchell's abdominal cavity. The growth was diagnosed as a malignant peritoneal mesothelioma, a rare and inevitably fatal cancer primarily triggered by exposure to asbestos. Again within a monthon February 3, 1996 Mitchell filed another action in the San Francisco Superior Court (case No. 975884, hereafter Mitchell II) against Asbestos Corporation and other defendants involved in making, selling, or using asbestos products. The complaint was served on Asbestos Corporation and several other named defendants.
The Mitchell II complaint primarily alleged that Mitchell's exposure to asbestos caused him to suffer "lung and/or other cancer, mesothelioma." The complaint then specifically alleged that "Plaintiff was diagnosed with mesothelioma on or about January 30, 1996 and with asbestosis and asbestos-related pleural disease on or about 1979." The complaint again prayed for compensatory and punitive damages.

Consolidation and Trial
On April 12, 1996the day after Asbestos Corporation filed its answerMitchell moved for an order to consolidate his two actions (Code Civ. Proc., § 1048, subd. (a)) and to advance the resulting consolidated case for trial because of substantial medical doubt that he would survive for more than six months (id., § 36, subd. (d)). On April 30, 1996, the court granted the motion in both respects.
Because of pretrial settlements the case went to trial against Asbestos Corporation alone.[2] The taking of testimony began on August 6, 1996. The medical witnesses testified to the following facts.
The alveoli are the numerous microscopic air sacs in the lung where the vital process of gas exchange takes place, i.e., where oxygen is absorbed into the bloodstream from the inhaled air and carbon dioxide is diffused out of the bloodstream into the air to be exhaled. For gas exchange to occur, the molecules of oxygen and carbon dioxide must pass through the interstitium or connective tissue, a thin, elastic membrane that connects, among other organs, the alveoli and the capillaries that surround them.
The witnesses described the mechanism by which asbestos causes asbestosis. Airborne asbestos fibers are inhaled into the *705 lungs and pass into the airways. Many are intercepted and rejected by the clearance mechanisms of the airways, but fibers that are not intercepted may reach the alveoli. Fibers smaller than 50 microns in length are able to enter the alveoli.[3] Fibers that enter the alveoli are deposited on the tissue surface and attract macrophages, white blood cells that attempt to absorb and eliminate the fibers. This effort fails, and causes an inflammation that in turn stimulates fibroblasts specialized cells that make connective tissueto increase their production of such tissue.
The result is fibrosis or scarring, a gradual but irreversible thickening and stiffening of the connective tissue.[4] Asbestos disease is dose-response related: the longer or the more intense the asbestos exposure, the greater the injury. In addition, scarring continues even after the victim is no longer exposed to asbestos, because the fibers remain embedded in the connective tissue and the tissue continues to react to them.[5]
The scarring process makes the connective tissue increasingly resistant to gas exchange, and the affected alveoli eventually cease to function. If enough alveoli are thus affected, a characteristic symptom of asbestosis appears: increasing shortness of breath under exertion. The latency period, of a disease is the period between the time of exposure to the disease-causing agent and the time when the disease has progressed to the point at which it can be diagnosed; the average latency period of asbestosis is 20 years. Although the disease can drastically restrict the activities of its victims and may lead to a higher risk of other diseases such as cardiorespiratory complications and cancer, "Asbestosis is neither malignant nor necessarily fatal." (1 Encyclopedia of Human Biology (1991) p. 420.) Indeed, as the case at bar illustrates, a person can live for decades after a diagnosis of asbestosis.
The medical witnesses also described mesothelioma. The mesothelium is a layer of specialized cells forming a thin membrane that lines certain body cavities: where it covers the lungs and the inner surfaces of the chest wall, it is called the pleura; where it covers the organs of the abdominal cavity and the inner surfaces of that cavity, it is called the peritoneum. Mesothelioma is a form of cancer that starts to grow in such lining: the most common form starts in the lining of the chest cavity and is therefore called pleural mesothelioma; less common is the form that starts in the lining of the abdomen, called peritoneal mesothelioma.[6]
Observation has established a strong linkage between mesothelioma and exposure to asbestos fibers. As explained above, inhaled asbestos fibers enter the bloodstream through the connective tissue of the lung. But while some fibers remain embedded in that tissue and cause asbestosis, others migrate to different parts of the body. Some fibers are carried in the bloodstream; others move through the lymphatic system; still others are swallowed with mucus and enter the body through the digestive system. However they enter the body, asbestos fibers may ultimately lodge in the pleura or the peritoneum.
*706 Although the mechanism by which such fibers cause malignant mesothelioma is not yet fully understood, it is believed they may trigger chromosomal abnormalities in cells of the pleura or the peritoneum. Ordinarily the body's immune system will detect and eliminate cells having such mutations. But if enough of these genetic errors occur over a long period of time, the immune system may fail to eliminate them; the defective cells may then become malignant and rapidly multiply, and a tumor may start to grow in the mesothelial tissue.
Whatever its precise etiology, the general characteristics of mesothelioma are well known. The witnesses agreed that malignant mesothelioma is a very rare cancer, even among persons exposed to asbestos; no one can predict whether or when such a person will develop mesothelioma. Among the population at large, malignant mesothelioma strikes only two or three persons per million each year. Yet it takes far less asbestos exposure to cause mesothelioma than to cause asbestosis, and mesothelioma can even be caused by exposure to a few substances other than asbestos.
Mesothelioma is often difficult to diagnose: in the form of the disease from which Mitchell sufferedperitoneal mesothelioma the tumor first grows as a spreading mass in the abdominal cavity of the victim, and its early signs are such nonspecific symptoms as stomach pain, nausea, vomiting, and weight loss. Mesothelial tumors initially grow very slowly; the disease has an average latency period of 30 to 40 years. But by the time the cancer is diagnosed, it is often in an advanced stage and is rapidly metastasizing. It is also inevitably fatal: there is no known cure for any form of malignant mesothelioma. As will appear, in the case at bar Mitchell died 17 months after the diagnosis of mesothelioma; the average survival time is less than a year.
In sum, the medical testimony established without contradiction that the asbestosis found in Mitchell's lungs in 1979 and the malignant mesothelioma found in his abdomen in 1996 were two separate and distinct diseases. Except for the likelihood that both were initially triggered by Mitchell's occupational exposure to asbestos, the two were unrelated in all respects: one did not cause or evolve into the other, they developed by means of wholly different mechanisms and at widely different rates, affected different tissue and organs, manifested themselves at different times and by different symptoms, and carried very different outcomes. As one of the medical experts explained, we deal here with "two different diseases, asbestosis, which is scar tissue formation ... and mesothelioma, which is cancer...."[7]

The Judgment
On August 15, 1996, after both sides rested, Asbestos Corporation moved to dismiss the portion of the action seeking damages for Mitchell's mesothelioma. The sole ground of the motion was that Mitchell II was barred by the statute of limitations set forth in Code of Civil Procedure section 340.2 (hereafter section 340.2) as that statute was construed in Darden v. General Motors Corp. (1995) 40 Cal. App.4th 349, 47 Cal.Rptr.2d 580 (hereafter Darden). The court denied the motion.
The case went to the jury on theories of negligence and liability for defective design and failure to warn. The jury returned a special verdict finding Asbestos Corporation liable on both theories and awarded compensatory damages, making separate noneconomic damage awards for asbestosis and for mesothelioma. The jury also found that Mitchell suffered appreciable *707 harm before January 4, 1986 (the effective date of Proposition 51), and that Asbestos Corporation was liable for 10 percent of Mitchell's injuries. After ordering offsets for third party settlements, the court rendered judgment for Mitchell without regard to Proposition 51. Asbestos Corporation asserted the statute of limitations again in motions for judgment notwithstanding the verdict and new trial. The court denied the motions.

The Appeal
Asbestos Corporation appealed from the judgment. On June 30, 1997, while the appeal was pending, Mitchell died from the mesothelioma.[8]
The Court of Appeal reversed the judgment in its entirety. The court first held that Mitchell II was time-barred by section 340.2. For this holding the court relied primarily on Darden, supra, 40 Cal. App.4th 349, 47 Cal.Rptr.2d 580.
Second, the Court of Appeal held the trial court lacked personal jurisdiction over Asbestos Corporation in Mitchell I because it had not been served in that action. The Court of Appeal found that Asbestos Corporation had not made a general appearance in the asbestosis action sufficient to constitute the equivalent of personal service. (Code Civ. Proc., § 410.50, subd. (a).)
We granted review.

I
The first issue is whether the Court of Appeal was correct in holding that Mitchell II was time-barred by section 340.2. We conclude the action was not barred.
Section 340.2 was enacted in 1979, and has not been amended. It provides in relevant part:
"(a) In any civil action for injury or illness based upon exposure to asbestos, the time for the commencement of the action shall be the later of the following:
"(1) Within one year after the date the plaintiff first suffered disability.
"(2) Within one year after the date the plaintiff either knew, or through the exercise of reasonable diligence should have known, that such disability was caused or contributed to by such exposure.
"(b) `Disability' as used in subdivision (a) means the loss of time from work as a result of such exposure which precludes the performance of the employee's regular occupation." (Italics added.)
Because a plaintiff cannot discover that his disability was caused by asbestos exposure before he suffers that disability, the disability must in all cases either precede or accompany its discovery. The two paragraphs of subdivision (a) of section 340.2 thus collapse into one, and the statute may be read as providing in effect that an action for injury or illness arising from asbestos exposure must be filed within one year after the date the plaintiff first suffered disability and either knew or should have known the disability was caused or contributed to by that exposure.[9]
In the case at bar there is no doubt Mitchell II was governed by section 340.2: the medical testimony establishedand plaintiffs do not disputethat Mitchell's mesothelioma was an "illness based upon exposure to asbestos" within the meaning of subdivision (a) of the statute.
*708 Giving the words of section 340.2 their plain meaning, however, we find Mitchell II was timely. Although section 340.2 applies only to actions for injury or illness arising from asbestos exposure, the statute does not make the limitations period run from the date of that injury or illness or its discovery, as similar statutes commonly provide. (See, e.g., Code Civ. Proc., § 340.15 [action for injury or illness caused by domestic violence].) Subdivision (a) of section 340.2 selects a different date, making the limitations period run instead from the date the plaintiff suffered "disability" and discovered that the disability was caused by asbestos exposure. And to underscore this difference, subdivision (b) of the statute specially defines "disability" as here used to mean "the loss of time from work as a result of such exposure which precludes the performance of the employee's regular occupation." (Italics added.)
Although this is the first time we have considered section 340.2, the Courts of Appeal have construed the statute in a number of relevant decisions. From the first case to do so, Blakey v. Superior Court (1984) 153 Cal.App.3d 101, 105-106, 200 Cal.Rptr. 52, we learn the intent of the Legislature in enacting section 340.2: it was, in essence, to provide a special statute of limitations for asbestos-related illnesses consistent with the fact that such slowly developing occupational diseases typically become symptomatic long before they become disabling, at least in the sense of disabling their victims from continuing to do their regular job. And that is the sense in which section 340.2 uses the term "disability": the court in Puckett v. Johns-Manville Corp. (1985) 169 Cal. App.3d 1010, 1017, 215 Cal.Rptr. 726 (Puckett), correctly inferred from the wording of the statute and its remedial purpose that the term "disability" as used therein refers to "a permanent termination of an individual's capacity to perform the tasks involved in his or her regular occupation rather than to some temporary interference with that capacity."
A subsequent decision stressed the remedial purpose of section 340.2. In Nelson v. Flintkote Co. (1985) 172 Cal.App.3d 727, 218 Cal.Rptr. 562 (Nelson), Nelson was occupationally exposed to asbestos from 1949 to 1956 and again beginning in 1963. In 1976 he was diagnosed as having asbestosis, but was able to continue working. In 1981, while still employed, he filed an action for personal injury damages caused by his asbestosis. The trial court sustained a demurrer on statute of limitations grounds and dismissed the action. The Court of Appeal reversed, holding that the one-year limitations period of section 340.2 had not begun to run when Nelson filed his action, because he was still employed at the time and therefore had not suffered "disability" within the meaning of the statute.
Among other reasoning, the Court of Appeal in Nelson, supra, 172 Cal.App.3d 727, 218 Cal.Rptr. 562, explained that "with the passage of section 340.2, the Legislature codified a more liberal disability plus discovery rule, providing that the limitation period never commences to run for plaintiffs who know they have suffered injury or illness from asbestos exposure until `disability' has occurred. [Citation.] [¶] This delayed accrual rule is more in keeping with the gradually disabling nature of the disease. Since asbestosis is a progressive lung disease, the product of prolonged exposure to asbestos fibers and dust, the disease may be detected before there has been any significant respiratory impairment or resulting partial or total disability. [Citations.] Principles of fairness and social utility favor application of this remedial statute to plaintiffs such as Nelson. It is for society's as well as the individual's benefit that asbestosis victims should work as long as they are able to do so without placing their rights in jeopardy. [Citation.] It would make no sense to penalize those victims who may have received an early diagnosis, particularly since there appears to be no evidence of *709 any cure." (172 Cal.App.3d at p. 735, 218 Cal.Rptr. 562.)
In Nelson, supra, 172 Cal.App.3d 727, 218 Cal.Rptr. 562, the plaintiff was still employed when he filed his action. In Duty v. Abex Corp. (1989) 214 Cal.App.3d 742, 263 Cal.Rptr. 13 (Duty), the plaintiff was no longer employed when she filed her actionbut the outcome was the same, because she had retired for reasons unrelated to asbestos exposure. Duty was occupationally exposed to asbestos in the mid-1940's and again in the early 1950's. She retired in 1968 on longevity grounds, and devoted herself to homemaking. In 1979 she learned that she had lung cancer and that it had been caused by her earlier asbestos exposure. She filed an action for personal injuries due to that exposure in 1985. The trial court granted a defense motion for directed verdict on statute of limitations grounds and dismissed the action.
The Court of Appeal reversed the judgment, holding that Duty had not suffered "disability" within the meaning of section 340.2 because her retirement was not the result of her asbestos exposure. The court gave effect to the plain meaning of the words of section 340.2 in two respects. First, the court reasoned that subdivision (a) of the statute is not narrowly limited to actions by employees, but broadly applies on its face to "any civil action" for asbestos-related injury or illness, and therefore includes actions by retirees as well. (Duty supra, 214 Cal.App.3d at pp. 749-750, 263 Cal.Rptr. 13.)
The court then held, however, that the special definition of "disability" provided in subdivision (b) of section 340.2 is not broad enough to include persons who retire for reasons unrelated to asbestos exposure. The court stressed that subdivision (b) defines "disability" as used in the statute to mean "`the loss of time from work as a result of [asbestos] exposure which precludes the performance of the employee's regular occupation.'" (Duty, supra, 214 Cal.App.3d at p. 750, 263 Cal.Rptr. 13.) The defendants urged the court to ignore the plain meaning of the statutory definition, but the court declined to do so. Rather, the court gave effect to each word of the definition, reasoning that "Had the Legislature used simply the terms `work' or `regular occupation,' we might find it possible to construe that language to encompass retirees such as plaintiff who, although not a member of the labor force, could be considered engaged in the occupation or work of homemaking. However, the addition of the term `employee' and the context of the subdivision as a whole compel us to conclude the Legislature intended `disability' to apply only to persons employed in the labor force." (Id. at p. 751, 263 Cal.Rptr. 13, italics added.)[10]
In Uram v. Abex Corp. (1990) 217 Cal. App.3d 1425, 266 Cal.Rptr. 695 (Uram), the plaintiff was likewise no longer employed when he filed his action, but it was conceded that his retirement was a result of asbestos exposure. The outcome was therefore different. Uram was occupationally exposed to asbestos from 1940 to 1959, when he took a disability retirement primarily because of his "lung problems." (217 Cal.App.3d at p. 1428, 266 Cal.Rptr. 695.) In 1976 he learned he had pulmonary fibrosis caused by his asbestosis exposure. He filed an action for personal damages due to that exposure in *710 1987. The trial court granted a defense motion for summary judgment on the ground the action was barred by section 340.2.
The Court of Appeal affirmed the judgment, holding that Uram suffered "disability" within the meaning of section 340.2 when he retired in 1959, and that he knew by 1976 that asbestos exposure had contributed to that disability. Uram, supra, 217 Cal.App.3d at p. 1435, 266 Cal.Rptr. 695.) His 1987 action was therefore barred by the one-year limitations period of section 340.2.
Finally, in Williamson v. Plant Insulation Co. (1994) 23 Cal.App.4th 1406, 28 Cal.Rptr.2d 751 Williamson), the court harmonized the foregoing decisions, reiterating the holding of Duty, supra, 214 Cal.App.3d 742, 263 Cal.Rptr. 13, and distinguishing Uram, supra, 217 Cal.App.3d 1425, 266 Cal.Rptr. 695. Williamson was occupationally exposed to asbestos from 1947 to 1977, when he was diagnosed with asbestosis. He continued to work for the same employer in the same position, but in locations with less asbestos exposure. In 1982 he retired because he believed the workplace was still unhealthy, and began a new career as a real estate salesman. In 1990 he was diagnosed with lung cancer, and in the same year filed an action for personal injuries caused by both the asbestosis and the cancer. He died during trial.
The jury found inter alia that Williamson's claim for damages from asbestosis was timely (no issue was raised as to the timeliness of his cancer claim). The trial court entered judgment for Williamson for both economic and noneconomic damages.
The Court of Appeal reversed the judgment for noneconomic and future economic damages on the ground they did not survive Williamson's death. On the statute of limitations issue, however, the Court of Appeal upheld the finding of timeliness. The court cited Puckett, supra, 169 Cal. App.3d at page 1017, 215 Cal.Rptr. 726, for the proposition that as used in section 340.2 "disability" means a permanent incapacity to perform the tasks of the employee's regular job, and cited Duty, supra, 214 Cal.App.3d at pages 748-753, 263 Cal. Rptr. 13, for the proposition that the limitations period of section 340.2 does not begin to run for a plaintiff who was not an employee, e.g., "who retired before the onset of what would otherwise have been a disability." Williamson, supra, 23 Cal. App.4th at p. 1419, 28 Cal.Rptr.2d 751.)
Applying these principles, the Court of Appeal held there was substantial evidence that Williamson was not disabled within the meaning of section 340.2 either when his asbestosis was diagnosed in 1977 or when he retired in 1982. Accordingly, his 1990 action was not barred by section 340.2. The court also distinguished Uram, supra, 217 Cal.App.3d 1425, 266 Cal.Rptr. 695, on the ground that while Uram retired because he was disabled within the meaning of section 340.2, "In contrast, here there was substantial evidence Williamson retired by his own choice to pursue another occupation, selling real estate." Williamson, supra, 23 Cal.App.4th at pp. 1419, 1420, 28 Cal.Rptr.2d 751.)
In the case at bar Mitchell II was timely under the foregoing decisions construing section 340.2. Directly in point are Duty, supra, 214 Cal.App.3d 742, 263 Cal.Rptr. 13, and Williamson, supra, 23 Cal.App.4th 1406, 28 Cal.Rptr.2d 751. As in both those cases, Mitchell retired for reasons unrelated to his earlier asbestos exposure: after working all his life, he reached the normal retirement age of 65 and voluntarily left the workforce. It follows there was no "loss of time from work as a result of [asbestos] exposure which preclude[d] the performance of [plaintiff's] regular occupation." (§ 340.2, subd. (b).) Again as in the cited cases, it follows that Mitchell did not suffer "disability" within the meaning of section 340.2 and hence the one-year limitations period of the statute had not begun to run when he filed Mitchell II. The action was thus timely, as the trial court ruled.
*711 Indeed, it is for precisely the same reasons that the one-year limitations period had also not begun to run when Mitchell filed Mitchell I, even though that filing took place 14 years after he was diagnosed with the asbestosis for which Mitchell I sought damages. The Court of Appeal correctly described Mitchell I as "unbarred," but failed to explain the reasons why it was timely. As shown above, when those reasons are understood they appear equally applicable to both actions: if one is timely, both are.
The Court of Appeal, however, held to the contrary, relying primarily on the reasoning of Darden, supra, 40 Cal.App.4th 349, 47 Cal.Rptr.2d 580. We therefore begin by reviewing that reasoning.
Darden was occupationally exposed to asbestos from 1946 to 1970. In 1970 he retired from his job as a sheet metal worker at Mare Island Naval Shipyard. In 1974 he began working as a repairman for a real estate company, but was laid off in 1982. In 1986 he was diagnosed with pulmonary fibrosis and asbestos-related pleural diseasenoncancerous lung diseases like asbestosis. In 1987 he filed an action for personal injuries due to asbestos exposure against General Motors and other defendants Darden I). He did not serve General Motors. In 1990 he settled his claims against certain defendants and dismissed the action against them with prejudice; at the same time, however, he dismissed the action against General Motors and the remaining defendants without prejudice.
In 1991 Darden served and filed a virtually identical complaint against General Motors and the other defendants Darden II). In pretrial and posttrial motions General Motors argued unsuccessfully that Darden II was time-barred by section 340.2. General Motors appealed from a judgment in favor of Darden. Darden died pending the appeal. The Court of Appeal reversed the judgment, holding that Darden II was time-barred by section 340.2. Although its opinion is unclear on the point, the court appears to have based its holding on two grounds.
For one ground, the court seems to have applied section 340.2 on its face. The jury had found that when Darden was laid off from his then "regular occupation" (§ 340.2, subd. (b)) as a repairman for a real estate company in 1982, he was not disabled from performing that occupation. The Court of Appeal expressly concluded there was no substantial evidence to support that finding. Darden, supra, 40 Cal. App.4th at p. 352, 47 Cal.Rptr.2d 580.) The court then impliedly inferred the contrary, i.e., that in 1982 Darden did "suffer[ ] disability" within the meaning of subdivision (a)(1) of section 340.2. The court further declared that "the evidence conclusively established that his illness at that time was related to asbestos exposure and that at the latest plaintiff was on notice in 1986 [i.e., when his pulmonary fibrosis and pleural disease were diagnosed] that he had asbestos-related lung disease" (40 Cal.App.4th at p. 352, 47 Cal. Rptr.2d 580). The court apparently concluded that by 1986 Darden thus knew or should have known that his disability was "caused or contributed to by [asbestos] exposure" within the meaning of subdivision (a)(2) of section 340.2. By its terms, therefore, section 340.2 would have required Darden to file the action he litigated against General Motors within one year after the latter date, i.e., by 1987. Accordingly, the Court of Appeal held "the 1991 action was untimely" on this ground. (40 Cal.App.4th at p. 352, 47 Cal.Rptr.2d 580.)
Assuming the Court of Appeal was correct in concluding that the jury erred in finding Darden was not disabled in 1982 within the meaning of section 340.2,[11] we agree that the court could have rested its holding and judgment on the foregoing ground. Instead, the court attempted to state an alternate ground in the published portion of its opinion. But that *712 attempt failed: the court's second ground, which the Court of Appeal relied on heavily in the case at bar, was premised on a confusion of unrelated doctrines and cannot be maintained.
The court based its second ground on the fact that Darden had filed two successive actions for injuries arising from the same asbestos exposure: Darden I in 1987 and Darden II in 1991. The court apparently recognized that both actions were timely within the plain meaning of section 340.2, but it was unwilling to accept that result. Instead, it held Darden II untimely under a new rule it created for the purpose, i.e., when a plaintiff files two successive actions for asbestos-related injuries against the same defendant, the one-year statutory period for filing the second action under section 340.2 begins on the date the first action is filed. (Darden, supra, 40 Cal.App.4th at p. 356, 47 Cal. Rptr.2d 580.)
Section 340.2, of course, contains no such provision. The Darden court offered two justifications for declining to give effect to the plain wording of the statute, but neither is persuasive.
As one purported justification, the court reasoned that "Section 340.2 postpones accrual of the cause of action for injury from exposure to asbestos.... By filing Darden I in 1987 plaintiff voluntarily commenced an action within the meaning of [Code of Civil Procedure] section 350 and therewith admitted that his cause of action had accrued. Plaintiff in effect invoked the bar of section 340.2 and cannot later revoke it...." (Darden, supra, 40 Cal. App.4th at p. 356, 47 Cal.Rptr.2d 580.)
The quoted reasoning, however, mistakenly equated the accrual of a cause of action for asbestos-related injury with the beginning of the limitations period prescribed by section 340.2. A cause of action accrues "upon the occurrence of the last element essential to the cause of action; that is when the plaintiff is first entitled to sue." (Buttram v. Owens-Corning Fiberglas Corp. (1997) 16 Cal.4th 520, 531, fn. 4, 66 Cal.Rptr.2d 438, 941 P.2d 71, italics omitted.) Under this rule, a cause of action for a latent injury or disease generally accrues, in the sense that it is ripe for suit, when the plaintiff discovers or should reasonably have discovered he has suffered a compensable injury. (Id. at p. 530, 66 Cal.Rptr.2d 438, 941 P.2d 71.) Before the enactment of section 340.2, that accrual date was also the date of the beginning of the limitations period in cases in which the latent injury or disease arose from exposure to asbestos. (Velasquez v. Fibreboard Paper Products Corp. (1979) 97 Cal. App.3d 881, 887-888, 159 Cal.Rptr. 113 [asbestosis].) But section 340.2 changed that rule, declaring a separate and distinct date for the beginning of the limitations period in asbestos cases, i.e., the date of disability as specially defined in the statute. The result, since the enactment of section 340.2, is that although the filing of an action for asbestos-related injury may be saidin Darden's wordsto be an "admission" that the cause of action has accrued in the ripeness sense, it is not an admission that the limitations period of section 340.2 has simultaneously begun. To hold otherwise is to rewrite the statute.
The Darden court's other justification for declining to give effect to the plain wording of section 340.2 is more difficult to grasp. The court asserted that to allow "multiple suits against the same defendant ... would offend the purposes of statutes of limitations," and concluded that there is no legislative intent "to allow multiple suits beyond the one-year limit" of section 340.2. (Darden, supra, 40 Cal.App.4th at p. 356, 47 Cal.Rptr.2d 580.) But as will appear in our discussion of the present Court of Appeal's reliance on the rule against splitting a cause of action, the rules prohibiting "multiple suits against the same defendant" have nothing to do with statutes of limitation. Legislative intent to allow or disallow "multiple suits" is not to be found in limitations provisions. The legislative intent expressed in section 340.2 is clear: *713 drawing no distinction between a single action for an asbestos-related disease (as in Duty) and multiple actions for the same disease (as in Darden) or for different diseases (as in the case at bar), section 340.2 declares that the limitations period for filing "any" action for asbestos-related disease begins on the date of the plaintiffs disability as specially defined in the statute. If the statute as written is deemed inadequate to deal with cases of multiple actions, it is for the Legislature, not the appellate courts, to rewrite it.
In addition to relying on the reasoning of Darden, supra, 40 Cal.App.4th 349, 47 Cal.Rptr.2d 580, the Court of Appeal in the case at bar invoked the primary right theory and its corollary, the rule against splitting a cause of action. As we explained in Crowley v. Katleman (1994) 8 Cal.4th 666, 681, 34 Cal.Rptr.2d 386, 881 P.2d 1083 (Crowley), "The primary right theory is a theory of code pleading that has long been followed in California. It provides that a `cause of action' is comprised of a `primary right' of the plaintiff, a corresponding `primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.] A pleading that states the violation of one primary right in two causes of action contravenes the rule against `splitting' a cause of action." We further explained (ibid.), "As far as its content is concerned, the primary right is simply the plaintiffs right to be free from the particular injury suffered."
Although the opinion of the Court of Appeal in the case at bar is silent on the point, the court appears to have assumed that Mitchell had only a single cause of action for both his asbestosis and his mesothelioma. Having assumed its premise, the court proceeded directly to inquire whether the case fell within an exception to the rule, and found none. Thus the court stated that the rule bars splitting a single cause of action "except where exceptional circumstances might justify a departure from the rule to avoid harsh results [citation]." The court recognized that to apply "an ordinary statute of limitations," even when ameliorated by the discovery rule, could indeed lead to harsh results in cases of asbestos-related diseases. But the court asserted that in California such potential harshness "has been all but eliminated through the enactment of section 340.2," because the statute allows asbestos plaintiffs to "escape all time constraints until they reach the point of disability." For this reason the court concluded that there were "no exceptional circumstances to justify a departure from the rule against splitting a cause of action."
We need not reach the question whether Mitchell had a separate primary right to be free from each of the two diseases resulting from his asbestos exposure. Even if we were to assume for purposes of argument that the filing of Mitchell II violated the rule against splitting a cause of action, it would not follow that the Court of Appeal correctly concluded that Mitchell II was time-barred. The court appears to have confused the rule against splitting a cause of action with the statute of limitations. The rule against splitting a cause of action is neither an aspect, nor a restatement, of the statute of limitations; rather, it is in part a rule of abatement and in part a rule of res judicata. As we further explained in Crowley, supra, 8 Cal.4th at page 682, 34 Cal. Rptr.2d 386, 881 P.2d 1083, "The primary right theory has a fairly narrow field of application. It is invoked most often when a plaintiff attempts to divide a primary right and enforce it in two suits. The theory prevents this result by either of two means: (1) if the first suit is still pending when the second is filed, the defendant in the second suit may plead that fact in abatement (Code Civ. Proc., § 430.10, subd. (c) ["There is another action pending between the same parties on the same *714 cause of action."]; ... ); or (2) if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the principles of res judicata (Panos v. Great Western Packing Co. (1943) 21 Cal.2d 636, 638-640 [134 P.2d 242])." (Italics added.) Neither of these applications of the rule against splitting a cause of action depends on whether the second action was brought within the period allowed by the statute of limitations. Conversely, application of the statute of limitations does not depend on whether a prior action was brought, or on how it was resolved. In the case at bar Asbestos Corporation did not plead the pendency of Mitchell I in abatement of Mitchell II. Accordingly, even if we were to assume the latter filing violated the rule against splitting a cause of action, Asbestos Corporation would be deemed to have waived the defense. (Ferraro v. Southern Cal. Gas Co. (1980) 102 Cal.App.3d 33, 43-44, 162 Cal.Rptr. 238; Rest.2d Judgments, § 26, subd. (1)(a).)
We conclude that the Court of Appeal erred in holding that Mitchell II was timebarred by section 340.2. To the extent they are inconsistent with our analysis, we disapprove Darden v. General Motors Corp., supra, 40 Cal.App.4th 349, 47 Cal. Rptr.2d 580, and its progeny, Barr v. ACandS, Inc. (1997) 57 Cal.App.4th 1038, 67 Cal.Rptr.2d 494.

II
The second issue presented in the petition for review is whether the Court of Appeal was correct in holding that the trial court lacked personal jurisdiction over Asbestos Corporation in Mitchell I because it had not been served in that action. We conclude the trial court did not lack jurisdiction.
"A general appearance by a party is equivalent to personal service of summons on such party." (Code Civ. Proc., § 410.50, subd. (a).) The statutory list of acts constituting an appearance (id., § 1014 [filing an answer, demurrer, motion to strike, etc.]) is not exclusive; "rather the term may apply to various acts which, under all of the circumstances, are deemed to confer jurisdiction of the person. [Citation.] What is determinative is whether defendant takes a part in the particular action which in some manner recognizes the authority of the court to proceed." (Sanchez v. Superior Court (1988) 203 Cal. App.3d 1391, 1397, 250 Cal.Rptr. 787 (Sanchez).)
The issue is thus fact-specific, and in the case at bar two paramount facts appear: the trial court ordered Mitchell's two actions to be consolidated for all purposes, and Asbestos Corporation fully participated without objection in the consolidated action. It thereby made a general appearance.
Code of Civil Procedure section 1048, subdivision (a), authorizes the trial court, when appropriate, to "order a joint hearing or trial" or to "order all the actions consolidated." Under the statute and the case law, there are thus two types of consolidation: a consolidation for purposes of trial only, where the two actions remain otherwise separate; and a complete consolidation or consolidation for all purposes, where the two actions are merged into a single proceeding under one case number and result in only one verdict or set of findings and one judgment. (Sanchez, supra, 203 Cal.App.3d at p. 1396; 250 Cal.Rptr. 787 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 310-311, pp. 404-406.)
Here the Court of Appeal read the record to mean that Mitchell's two actions were consolidated for trial only, and found nothing beyond Asbestos Corporation's "bare participation in the consolidated trial" to suggest that it recognized the authority of the court with regard to Mitchell I. We read the record otherwise.
As noted above, on the day after Asbestos Corporation filed its answer in Mitchell *715 II, Mitchell moved to consolidate Mitchell I (case No. 955576) with Mitchell II (case No. 975884). The Court of Appeal gave great weight to the fact that in his points and authorities Mitchell had argued that the trial court had the power to consolidate the cases for trial and had cited only decisions justifying such consolidation. But Mitchell may not have clearly understood the distinction between the two types of consolidation, and in any event his motion was not so limited: Mitchell moved for "an order consolidating Action No. 955576 with Action No. 975884," nowhere stating that the order should be limited to consolidation for trial.[12]
More important, the court's order granting the motion was not limited to a consolidation for trial: rather the court declared that "IT IS ORDERED that Action[s] Nos. 955576 and 975884 are consolidated as Action No. 955576." (Italics added.) In addition, Mitchell had simultaneously moved for trial-setting preference because of his terminal illness (Code Civ. Proc., § 36, subd. (d)), and the trial court awarded that relief in the same order as the order of consolidation, declaring that "IT IS FURTHER ORDERED that the consolidated Action No, 955576" is granted such preference. (Italics added.) This is the language of complete consolidation.
As would be expected after a consolidation for all purposes, all further filings by Mitchell bore only the Mitchell I title and the single case number, No. 955576. When the case was called for trial, the clerk announced it as a consolidated action under the same single case number. Throughout trial, the clerk's minutes designated the proceeding by its Mitchell I title and case number, adding for identification only, "consol. w/ 975884." Finally, there was only one verdict and one judgment, and each was numbered in the same way as the clerk's minutes.
Any possible ambiguity remaining after the foregoing consistently titled and numbered filings was removed by the trial court itself at the hearing on defense motions for judgment notwithstanding the verdict and for new trial. As part of its ruling denying those motions, the court declared: "A motion to consolidate the two cases for all purposes and advance the consolidated action for trial was made. [Asbestos Corporation] was served with that motion but did not oppose it. The motion was granted and the two cases were consolidated for all purposes and an early trial date was ordered." (Italics added.) Consolidation under Code of Civil Procedure section 1048 is permissive, and it is for the trial court to determine whether the consolidation is for all purposes or for trial only. (See Committee for Responsible Planning v. City of Indian Wells (1990) 225 Cal.App.3d 191, 196, fn. 5, 275 Cal.Rptr. 57.)
Asbestos Corporation, moreover, fully participated in this consolidated action from beginning to end. First, as the trial court noted, Mitchell served his motion to consolidate on Asbestos Corporation, but Asbestos Corporation made no objection to it. At the start of trial Mitchell inquired if Asbestos Corporation objected to his proving the latter's liability for both his asbestosis and mesothelioma, and counsel for Asbestos Corporation replied, "I don't think I can object as to how you want to proceed. I can only prove that you didn't prove it." Counsel for Asbestos Corporation subsequently signed and filed an affidavit (concerning a notice of deposition) bearing only the title and case number of Mitchell I, and later signed a stipulation (concerning trial exhibits) that also bore only the title and case number of Mitchell I. As noted above, Asbestos Corporation was the sole defendant at trial and actively defended itself on the merits of all the claims litigated by Mitchellclaims arising from both asbestosis and mesothelioma. *716 Lastly, at no time throughout the proceedings did Asbestos Corporation object to the trial court's jurisdiction on the ground it had not been served in Mitchell I.[13]
We conclude the record supports the trial court's determination that Mitchell I and Mitchell II were consolidated for all purposes as Mitchell I, case No. 955576, and that Asbestos Corporation made a general appearance in that action. The Court of Appeal erred in holding to the contrary.

III
In its opening brief in the Court of Appeal Asbestos Corporation raised four additional issues that the Court of Appeal did not reach because of its holdings discussed herein.[14] It is appropriate to remand for the Court of Appeal to resolve those issues in the first instance.
The judgment of the Court of Appeal is reversed with directions to resolve the remaining issues raised in appellant's opening brief in that court.
GEORGE, C.J., KENNARD, J., BAXTER, J., WERDEGAR, J., and CHIN, J., concur.
Concurring Opinion by BROWN, J.
I concur with the majority's ultimate disposition and reluctantly agree with its interpretation of Code of Civil Procedure section 340.2.[1] I, however, write separately because I see no need to disapprove of Darden v. General Motors Corp. (1995) 40 Cal.App.4th 349, 47 Cal.Rptr.2d 580 (Darden), and its progeny, Barr v. ACandS, Inc. (1997) 57 Cal.App.4th 1038, 67 Cal. Rptr.2d 494 (Barr).
First, Darden and Barr are distinguishable. In Darden, the plaintiff filed a second lawsuit with the same defendant and virtually the same allegations as the first lawsuit he filed almost four years earlier. Consequently, the Court of Appeal held that the plaintiffs second action was timebarred because the filing of the first action triggered the running of the one-year statute of limitations period. Darden, supra, 40 Cal.App.4th at p. 356, 47 Cal.Rptr.2d 580.) Likewise, the Court of Appeal in Barr found the causes of action in the plaintiffs' second lawsuit time-barred because the plaintiffs had asserted the same causes of action in their initial lawsuits filed several years earlier. (See Barr, supra, 57 Cal.App.4th at pp. 1053-1056, 67 Cal.Rptr.2d 494.)
Unlike the plaintiffs in Darden and Barr, plaintiff in this case did not allege the same causes of action in his two lawsuits. Plaintiffs first action sought recovery for asbestosis. In contrast, his second action sought recovery for mesothelioma, a different and unrelated disease caused by asbestos exposure. Thus, the causes of action in the second complaint were separate and distinct from those in the first complaint, and the filing of the first action did not trigger the one-year statute of limitations for the causes of action in the second action.[2] As such, plaintiffs second *717 lawsuit would not be time-barred under Darden and Barr.
Second, I believe Darden properly harmonizes sections 312, 340.2 and 350. Section 350 states that the filing of a complaint commences a civil action. Section 312 then explains that a plaintiff can only commence a civil action "within the periods prescribed in this title, after the cause of action shall have accrued." (Italics added.) Viewed together, these two statutes establish that a plaintiff, by filing a complaint, admits that the causes of action asserted in that complaint have accrued and fall within the applicable limitation period contained in title 2 of the Code of Civil Procedure. In doing so, the plaintiff necessarily admits that the limitation period has started running. Otherwise, the asserted causes of action could not fall within that limitation period.
These admissions, however, arguably conflict with section 340.2, which states that the statute of limitations for asbestos-related illnesses begins to run when the plaintiff suffers a "disability." Because we must harmonize potentially conflicting statutes whenever possible (Broughton v. Cigna Healthplans (1999) 21 Cal.4th 1066, 1086, 90 Cal.Rptr.2d 334, 988 P.2d 67), we should, consistent with Darden, conclude that the one-year limitation period for asbestos-related causes of action is triggered when a plaintiff either (a) suffers a disability as defined in section 340.2 or (b) files a complaint asserting those causes of action. (See Darden, supra, 40 Cal.App.4th at p. 356, 47 Cal.Rptr.2d 580.)
Such a conclusion comports with the legislative intent behind section 340.2. In enacting section 340.2, the Legislature intended to extend the limitation period for asbestos-related illnesses because these illnesses often develop slowly and become symptomatic long before they become disabling. (See Blakey v. Superior Court (1984) 153 Cal.App.3d 101, 105-106, 200 Cal.Rptr. 52.) The Legislature also wished to encourage individuals afflicted with asbestos-related illnesses to work as long as possible without jeopardizing their right to recovery. (See Nelson v. Flintkote Co. (1985) 172 Cal.App.3d 727, 735, 218 Cal.Rptr. 562 (Nelson).) Making the filing of the complaint an alternative trigger for the one-year limitation period detracts from neither purpose. Individuals suffering from asbestos-related illnesses are only barred from filing serial lawsuits. They still benefit from the delayed accrual date established by section 340.2 and may work as long as they can without jeopardizing their right to recovery. Because the Legislaturewhich clearly intended to place some limits on asbestos-related lawsuitssurely did not intend to give plaintiffs indefinite leave to file multiple lawsuits, I believe Darden and Barr were correctly decided.
Of course, Darden would be superfluous if the language of section 340.2 was less cumbersome and confusing. Indeed, the awkward wording of the statute creates several anomalous results. For example, section 340.2 eliminates the statute of limitations for plaintiffs unemployed due to non-asbestos-related reasons but maintains *718 a one-year limitation period for plaintiffs unemployed due to an asbestos-related disability. Not only does such a distinction make little sense, it undermines the very purpose behind the statute by encouraging plaintiffs to quit work before they become disabled so they can prolong their right to sue. (See Nelson, supra, 172 Cal.App.3d at p. 735, 218 Cal.Rptr. 562 [the Legislature, by enacting § 340.2, intended to encourage workers with asbestos-related conditions to work as long as possible].) Moreover, section 340.2, by its terms, bars plaintiffs diagnosed with asbestos-related cancer over one year after becoming disabled due to asbestos exposure from asserting cancer claims. Such a result contravenes the main purpose behind section 340.2to ameliorate the harsh application of the previous statute of limitations. (See Duty v. Abex (1989) 214 Cal.App.3d 742, 747-748, 263 Cal.Rptr. 13.) In light of these bizarre and, I suspect, unintended results, I urge the Legislature to revisit and revise section 340.2.
NOTES
[*] Brown, J., dissented.
[1] The complaint also alleged that Mitchell suffered "increased risk and fear of developing mesothelioma" and other cancers. After Mitchell I was filed, however, we adopted the general rule that damages for fear of cancer may be recovered only if it was more likely than not that the cancer would occur. (Potter v. Firestone Tire & Rubber Co. (1993) 6 Cal.4th 965, 997, 25 Cal.Rptr.2d 550, 863 P.2d 795.) As will appear in our discussion of the medical testimony in this case, mesothelioma may be triggered by asbestos exposure but its incidence is extremely low.
[2] Mitchell's trial theory was that Asbestos Corporation supplied asbestos fibers to a company that made an insulating cement used by one of Mitchell's former employers.
[3] One micron is one-thousandth of a millimeter.
[4] In asbestosis, the scarring occurs on the middle and lower portions of the lung; scarring in the lining of the lung on both sides is pleural plaque; scarring throughout the lining of the lung is diffuse pleural fibrosis; and scarring that has been present long enough to calcify is pleural calcification. Mitchell suffered from each of these conditions.
[5] For a more detailed explanation of the scarring process, see Armstrong World Industries v. Aetna Casualty & Surety Co. (1996) 45 Cal. App.4th 1, 37-39, 52 Cal.Rptr.2d 690 (Armstrong).
[6] Where the mesothelium constitutes the sac that surrounds the heart, it is called the pericardium. Pericardial mesothelioma is by far the least common form.
[7] In a legally different but factually similar case, the Court of Appeal upheld an award of death benefits based on uncontradicted medical testimony that peritoneal mesothelioma does not develop from asbestosis but rather is "an entirely separate and distinct disease process resulting in an entirely separate and distinct injury and disability." (Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd. (1990) 219 Cal.App.3d 1265, 1273, 268 Cal.Rptr. 699.)
[8] The Court of Appeal ordered Mitchell's adult daughters, Linda Hamilton and Janet Iorio, to be substituted as his successors in interest. (Code Civ. Proc., § 377.32.)
[9] A similar statute is in fact phrased in the conjunctive: Labor Code section 5412 provides, "The date of injury in cases of occupational diseases ... is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his present or prior employment." (Italics added.)
[10] The court invited the Legislature to revisit section 340.2 if it disagreed with the court's construction of the statute: "It is not for us to determine whether the Legislature acted wisely in defining so narrowly the term `disability.' We reiterate our observation in Blakey v. Superior Court, supra, 153 Cal.App.3d 101 [200 Cal.Rptr. 52], that although the effects of this statute `may seem somewhat anomalous,' that is the scheme the Legislature has enacted. Until and unless the Legislature sees fit to amend the statute, `it is the function of this court to apply the statute as written.' [Citation.]" (Duty, supra, 214 Cal.App.3d at p. 753, 263 Cal.Rptr. 13.)

In the 11 years since the court issued that invitation, other courts have construed the statute in the same way but the Legislature has not seen fit to amend it.
[11] The court did not publish the portion of its opinion justifying its conclusion on this issue.
[12] It is true that the motion also recited that the actions "involve common questions of law and fact" and consolidation "will avoid unnecessary costs and delay," but these grounds will support a consolidation of either type.
[13] Indeed, Asbestos Corporation did not even raise this issue in its appeal from the judgment the Court of Appeal raised it on its own motion. When Mitchell objected, in a petition for rehearing, that the Court of Appeal had thereby violated Government Code section 68081, the court ordered a rehearing. Ninety days later, without supplemental briefing or argument, the Court of Appeal filed the opinion now under review, reiterating its reasoning and holding on the issue.
[14] Asbestos Corporation contended that (1) a supplier of raw asbestos for use in manufacturing by others should not be subject to strict liability to the consumer of the finished product; (2) Mitchell's evidence of causationi.e., that he was exposed to asbestos supplied by Asbestos Corporationwas speculative and insufficient as a matter of law; (3) certain deposition testimony on the preceding issue of causation was inadmissible hearsay; and (4) the trial court erred in ruling Proposition 51 inapplicable in the circumstances of this case.
[1] All further statutory references are to the Code of Civil Procedure.
[2] Most other jurisdictions have reached the same conclusion. (See, e.g., Wilson v. Johns-Manville Sales Corp. (D.C.Cir.1982) 221 App. D.C. 337, 684 F.2d 111, 120-121 [diagnosis of asbestosis does not trigger the statute of limitations for cancer caused by the same exposure]; Eagle-Picher Industries, Inc. v. Cox (Fla.Dist.Ct.App.1985) 481 So.2d 517, 520 [same]; VaSalle v. Celotex Corp. (1987) 161 Ill.App.3d 808, 113 Ill.Dec. 699, 515 N.E.2d 684, 687 [same]; Smith v. Bethlehem Steel Corp. (1985) 303 Md. 213, 492 A.2d 1286, 1296 [same]; Larson v. Johns-Manville Sales Corp. (1986) 427 Mich. 301, 399 N.W.2d 1, 9 [same]; Fusaro v. Porter-Hay den Co. (1989) 548 N.Y.S.2d 856, 860 [145 Misc.2d 911, 918] [same]; Marinari v. Asbestos Corp. (1992) 417 Pa.Super. 440, 612 A.2d 1021, 1028 [same]; Potts v. Celotex Corp. (Tenn.1990) 796 S.W.2d 678, 685 [same]; Sopha v. Owens-Corning Fiberglas Corp. (1999) 230 Wis.2d 212, 601 N.W.2d 627, 636 [same]; but see Pustejovsky v. Pittsburgh Corning Corp. (Tex.App.1998) 980 S.W.2d 828, 831-833 [barring cancer claim because diagnosis of asbestosis triggered the running of the limitation period] [review granted on Feb. 25, 1999]; Joyce v. A.C. AND S., Inc. (4th Cir.1986) 785 F.2d 1200, 1205 [barring asbestosis claim because diagnosis of pleural thickening triggered the running of the limitation period].)